## Case No. 7,458.

### JONES v. COAL BARGES.

[3 Wall. Jr. 53:[1] 3 Am. Law Reg. 391; 3 Pittsb. Leg. J. 44.]

Circuit Court, W. D. Pennsylvania. April Term, 1855.

GRIER, Circuit Justice. The subject of dispute proposed by the libel, is a collision between two coal barges loaded with coal. They are not ships or vessels in the maritime sense of the terms. They do not take out a coasting license. They are generally

---

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

mere open chests or boxes of small comparative value, which are floated by the stream and sold for lumber at the end of their voyage. A remedy in rem against such a vessel, either for its contracts or its torts, would not only be worthless but ridiculous; and the application of the maritime law to the cargo, and hands employed to navigate her, would be equally so.

The case of The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 458, reversing the former decisions of the supreme court (which had adopted the English definition of navigable rivers, and bounded the jurisdiction of admiralty courts by tide water), does not necessarily extend the sceptre of the admiral over every stream whose occasional floods or factitious basins may suffice to float a steamboat. If it was unreasonable to refuse to ships and steamboats on our great lakes and rivers the benefit of the remedies afforded by courts of admiralty, it may be equally so to apply the principle and practice of the maritime law to everything that floats on a fresh water stream. Every mode of remedy and doctrine of the maritime law affecting ships and mariners. may be justly applied to ships and steamboats. but could have no application whatever to rafts and flat boats. A court of admiralty is not needed to try common law actions of trespass, nor to administer common law remedies in any form.

The act of 1845 extends the jurisdiction of courts of admiralty to "the lakes and navigable waters connecting said lakes." On other navigable rivers it seems to have been assumed by virtue of the decision of the supreme court, and without regard to the limitations of the act of congress, either as to place or subject. But the court having decided this act of congress to be constitutional and binding, it must govern the question as to the subjects which it defines, even if it be not considered as denying such jurisdiction on the navigable waters omitted.

This act confines the jurisdiction of admiralty courts on the lakes and rivers, to "matters of contract and tort in, upon, or concerning steamboats and other vessels of twenty tons burden and upward, enrolled and licensed for the coasting trade, and at the time employed in business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters connecting said lakes."

The supreme court, in speaking of this provision in the act of 1845, and of the act of 1789, says: "These laws are both constitutional, and ought therefore to be carried into execution. The jurisdiction, under both laws, is confined to vessels enrolled and licensed for the coasting trade; and the act of 1845 extends only to such vessels when they are engaged in commerce between different states and territories. It does not apply to vessels engaged in the domestic commerce of a state, nor to a vessel, or boats, not enrolled and licensed for the coast-

ing trade under the authority of congress." The Genesee Chief v. Fitzhugh, supra.

It follows, that in order to show the jurisdiction of the district courts of the United States in "matters of contract and tort" arising on the lakes and other navigable rivers. the libellant should aver and prove the facts and conditions stated in the act of congress of 26th of February, 1845. And as in this case no amendment to this effect can be made conformably with the facts of the case, the decree is reversed, and the cause dismissed for want of jurisdiction. The question of costs is reserved for further hearing.