## Case No. 4,783.

### FIFTY THOUSAND FEET OF TIMBER.

[2 Lowell, 64.] [1]

District Court, D. Massachusetts. Sept., 1871.

LOWELL, District Judge. These two rafts of timber were found floating in the harbor of Boston during the ebb-tide in the evening, at a considerable distance from the place where they had been moored, and services were rendered by the libellants which would

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

enable them to secure reasonable compensation, at least pro opere & labore, if the court has jurisdiction of the suit as one of salvage, and if salvage services can be performed to a raft of timber. Decisions can be cited against the view that this is a case for salvage; but I am of opinion, nevertheless, that it is of that character. A salvage service is performed when goods are saved from peril at sea, or on other navigable waters, or cast upon the shores thereof. And this case is within the definition.

There are two judgments that a raft of timber is an exception to the general rule. Nicholson v. Chapman, 2 H. Bl. 254; Tome v. Four Cribs of Lumber [Case No. 14,083]. The first of these cases was decided when the admiralty courts were prohibited from entertaining such actions if the place of performance was in the body of a county; and the court held that there would be great hardship and inconvenience to the trade in permitting such claims to be set up when the services were done so near home; and, as no compensation is allowed by the common law in cases of this kind, it refused to make any distinction in favor of a river. This decision appears to be sound, upon common-law principles. When Taney, C. J., decided the second case above cited, our courts of admiralty had made the discovery that water is water, even within the limits of a county; and he gave no force to the point of locality as a jurisdictional fact, but he thought that Nicholson v. Chapman was well decided upon general grounds of convenience, especially as he found a custom to prevail in the timber trade of the Susquehanna, by which there was to be no salvage in such cases. He said that the salvors must seek their remedy for a reasonable compensation in the courts of common law; forgetting that these courts never allow any compensation, unless there is evidence of a promise.

Another decision sometimes cited is A Raft of Timber, 2 W. Rob. Adm. 251, which turned merely upon a question of jurisdiction; the courts of admiralty having been prohibited from entertaining such a claim arising, as this arose, within the limits of a county, and parliament having granted them jurisdiction, even within those sacred precincts, in respect to salvage services rendered to any ship or sea-going vessel, Dr. Lushington very properly decided that a raft was not a ship or sea-going vessel. Another statute soon remedied the defect pointed out by this case; and gave the admiralty jurisdiction to decide upon all claims and demands in the nature of salvage for services performed, whether in the case of ships, goods, or other articles found at sea or cast on shore, and whether the services had been performed on the high seas, or within the body of a county. 9 & 10 Vict. c. 99, § 40. It is perfectly clear from this statute, and from the concessions of counsel and court in the case in 2 W. Rob. Adm., that salvage services may be performed to a raft of timber as well as to any other property, and that the only difficulty was one of locality. And so it was held by Judge Betts, in a well considered judgment. A Raft of Spars [Case No. 11,529].

A suit for salvage is neither contract nor tort. It resembles the latter in being a proceeding for unliquidated damages, and in depending on locality. No personal action will lie without either an express promise or an acceptance of the goods subject to the maritime lien, and in the latter case it is only maintainable to the extent of the lien, and only in the admiralty. If the services are rendered, it is of no consequence whether the goods are a ship or part of a ship, or were ever on board a ship. A great many of the cases are of mere derelict goods picked up at sea; and no one ever heard that it would be a defence to a proceeding for salvage, that the goods had been washed out to sea from the shore by a gale or flood, or had been dropped from a balloon. I have had a case of the former kind; though, to be sure, the subject-matter was an unmanned vessel. If it had been a barrel of oil, the principle would have been the same.

No custom has been proved in this case for timber merchants to assume their own risks. Nothing whatever has been advanced in evidence to distinguish this from any other case of salvage. The arguments which prevailed in the two cases first cited find no support from the facts of this case. Most of them will apply to any salvage services performed near the shore; and to all of them the sufficient answer is, that the admiralty court has full power to regulate the compensation, or to deny it altogether, as circumstances may require. To my mind it is entirely clear that the only adverse case in this country depends, and can only be supported, upon the custom proved to exist in that case; and that the English cases, which failed solely from a defect of jurisdiction, have been remedied by the healing power of parliament, which has restored the old jurisdiction of the admiralty.

Salvage decreed.