# GEORGE A. GINDELE ET AL.
## v.
## JOHN CORRIGAN.

*Water Crafts—Statute—Collision—Ownership of Canal Boat—Jurisdiction—Admiralty.*

1. A proceeding under the "Water Craft Act," though in many of its features like a proceeding *in rem* in admiralty, is not within the exclusive jurisdiction of the Federal courts, the remedy being one which a common law court is competent to give, and the result reached being a judgment *in personam.*

2. In the case presented, the jury were warranted in finding the appellee to have been the owner of a canal boat, which was sunk in a collision.

[Opinion filed December 13, 1888.]

APPEAL from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. C. E. KREMER and C. W. BROWN, for appellants.

Messrs. DUNCAN, O'CONOR & GILBERT, and HALEY & O'DONNELL, for appellee.

UPTON, J. This is a proceeding instituted by John Corrigan, appellee, against the steam canal boat, "Nunnemacher," pursuant to Chapter 12 of the Revised Statutes of Illinois, commonly known as the "Water Craft Act."

The cause of action alleged in the petition arose from a collision of the steam canal boat "Nunnemacher," of above fifty tons burden, owned by the Illinois and Michigan Canal Company, a corporation organized and doing business in the State of Illinois under and in pursuance of the laws thereof, of which corporation the said George A. Gindele is an officer, manager of its business, and a shareholder therein, and the canal boat "Midnight," then belonging to John Corrigan, the appellee, and being of above five tons burden, the steam canal boat "Nunnemacher" and the canal boat "Midnight" being at the time of such collision domestic vessels and water craft, and both engaged in commerce wholly within the borders of the State of Illinois, and the home port of both being within this State, and enrolled and licensed pursuant to law.

In the night time of the 8th of May, 1886, the canal boat "Midnight," in charge of William Peck, as master, being towed by mules, was on its way from the city of Chicago to Peru, in La Salle county, on the waters of the Illinois and Michigan canal, and within the State of Illinois, laden with a cargo of hard coal screenings. Near Lamont, in Will county, in the State of Illinois, she was overtaken "en route" and run into by the steam canal boat "Nunnemacher," broken open in keel and side, sunk, and rendered a total loss, without fault on the part of the canal boat "Midnight," her officers or crew, and through the negligence and want of care of the officers and persons in charge of the steam canal boat "Nunnemacher," as is alleged in the petition.

On the 14th day of May, 1886, Corrigan, the appellee, sued out of the Circuit Court of Will county a writ of attachment under the provisions of the "Water Craft Act," against the steam canal boat "Nunnemacher," alleging in his petition that the owners of the steam canal boat were unknown.

The writ was issued on that day pursuant to the provisions of such act, and the boat was seized under the writ by the sheriff of Will county. Five or six days thereafter, John A. Gindele, claiming an interest as part owner in the steam canal

boat, bonded and released the boat from such seizure under
Secs. 15 and 17 of said Chap. 12, R. S. (being the Water Craft
Act), his sureties being John Angus and George P. Adams
the appellants, and thereupon a writ of restitution was issued,
and returned by the sheriff of Will county, executed pur-
suant to the 17th section of the aforementioned act, and the
said steam canal boat was thereupon discharged and released
from the lien of such attachment, as provided in the attach-
ment act.

Some time after such restitution, George A. Gindele, one of
the appellants, entered his appearance in such attachment pro-
ceedings, filed his answer thereto, claiming to be interested in
the steam canal boat as part owner thereof, and as principal in
the bond given and filed in that court to obtain the release of
the boat from such attachment seizure, therein admitting the
collision at the time, place, and with the results charged in
such petition for the attachment, but denying that it was
caused by the negligence or want of care or skill on the part
of those in charge of the steam canal boat " Nunnemacher,"
or that the canal boat or her owners were liable therefor.

This answer was subsequently withdrawn, by leave of court,
and appellants were allowed to enter a motion to dismiss the
proceedings for want of jurisdiction in the trial court; and
thereupon, on leave obtained, Corrigan, appellee, amended his
petition, which, being re-filed, the motion to dismiss for want
of jurisdiction was again interposed, which motion being over-
ruled, a replication was filed to the answer, and the cause
submitted to a jury for trial, who, after hearing the evidence,
returned a verdict for the appellee for $1,000. A motion was
made for a new trial and overruled. Judgment was entered
on the verdict, and the case is brought to this court on appeal,
and errors are assigned upon the record, by which is presented
for our determination two questions:

First.    Had the trial court jurisdiction of the subject-matter
involved in the proceeding?

Second.    Were the jury justified from the facts and circum-
stances in evidence before the trial court, in finding the appel-
lee, Corrigan, the owner of the canal boat " Midnight?"

We will consider these questions in the inverse order of their statement, and examine the second proposition first.

It will be apparent, on a careful examination of this record, that the trial in the court below proceeded upon the theory, conceded by both appellant and appellee, that the canal boat "Midnight" was in fact owned by appellee, John Corrigan. No questions specifically upon that point seem to have been made upon the trial.

George A. Gindele, one of the appellants who was sworn upon the trial, in speaking of the trade or business in which the "Midnight" was engaged at the time of its loss, speaks of it as "Corrigan's boat." He further states "that he requested Corrigan to remove the sunken wreck of the 'Midnight' after the collision, but that Corrigan refused and abandoned her."

John Corrigan, appellee, in his testimony swears, "that less than one year before the collision, he caused the 'Midnight' to be repaired, or put repairs on her, to the amount of $520 and more; that he kept her in good repair all the time by putting repairs upon her from time to time, the season of her loss, and that she was in good repair at the time she was sunk by the collision." He says, "She was worth $1,000 and more, at the time of the collision, and I would not have taken $1,000 for her." He also says, "William Peck had charge of the boat." He further states the rates he was receiving per ton for freight carried on the boat at the time of her loss by the collision, and the amount of freight it would have earned for him on the voyage in which her loss occurred, but for such collision, after paying her tolls and the wages of her men.

It seems to us that appellants' instructions to the jury, and the special findings submitted by them to the jury, manifestly assume the ownership of the canal boat "Midnight" to have been in the appellee, and we think under all the facts and circumstances in evidence in the case, the jury were fully warranted in so finding the appellee to have been the owner at the time of the collision, and that the court below committed no error in rendering judgment on the verdict, so far as that question is involved.

The important question involved in this case, however, is, had the court below jurisdiction of the subject-matter herein involved?

It must be conceded that the proceedings in the Circuit Court were in strict conformity to, and within the provisions of, the statute entitled, "Attachment of Water Craft," Chap. 12, R. S. 1874, both in form and substance.

No challenge is made, in the discussion before us, of improper rulings of the court upon the trial, except as before stated, either as to the evidence, or the giving of or refusal of instructions to the jury.

It is strenuously insisted, however, by the learned counsel for the appellants, that the collision complained of in the case at bar, and the consequent loss of the canal boat "Midnight," is a *maritime tort*, and consequently is within the original and exclusive jurisdiction of a court of admiralty by virtue of the act of Congress of 1789, and that, wherein the District Courts of the United States have original cognizance of admiralty causes by virtue of that act, such cognizance is exclusive, and that no other court, State or National, can exercise it, with the exception always of such concurrent remedies as are given by the common law. To maintain that position our attention is directed to several cases determined in the Federal courts wherein this question seems to have been discussed, and the contention of appellants' counsel sustained, either in whole or part, but which, in the view we take of the case, we do not feel called upon carefully to consider or discuss. Whatever opinion we might entertain upon that contention, if it could be regarded as an open question in this State, and we were permitted its examination and determination, regardless of the judgment and authoritative decisions of the court of last resort in this State, is as unnecessary as it would be useless to express.

We shall content ourselves, therefore, with a brief examination of a few of the several decisions of the Supreme Court of this State upon the question; further investigation could serve no useful purpose.

We may premise, that a tort is defined to be an injury or wrong committed with or without force to the person or the

Gindele v. Corrigan.

property of another, real or personal, in possession or remainder, and that such injury may arise by either the non-feasance, malfeasance or misfeasance of the wrong-doer.

In the case of Loy v. Steamboat Aubury, 28 Ill. 412, which was an action of trespass brought in the La Salle Circuit Court against the steamboat for an assault and battery committed by the mate of the steamboat upon the plaintiff while he was a passenger upon the boat, which action was brought and prosecuted under and pursuant to the act of February 16, 1857, the title of which was to amend Chap. 102, R. S., entitled "Steamboats," and known as "The Water Craft Act," and was substantially the same as the one now in force, so far as the question now being considered is involved. In that case was presented, says Judge Breese writing for the court, this question: Can an action of trespass be maintained against a steamboat for an assault and battery committed by the mate of a boat upon the person of a passenger on board, while such boat is navigating the rivers within or bordering upon this State?

After a careful examination that court held that it could be maintained under the "Water Craft Act," then in force and before cited, and directed the entry of judgment for the plaintiff in the Circuit Court, citing in support of that opinion, Steamboat Champion v. Jansen, 16 Ohio, 91; Canalboat Huron v. Simmons, 11 Ohio, 458.

The predicates of the case in 28 Ill., *supra*, and those cited therein from Ohio, were clearly *maritime torts* and the proceedings were instituted and prosecuted under and in pursuance of the enactments of the Legislature directly against the vessel, as in the case at bar.

We see no reasonable distinction in those cases from the one before us, upon the question of State jurisdiction of *maritime torts;* indeed it seems to us that, if distinction there can be, it is in favor of the appellee, for in the case at bar the personal bond of the appellant was substituted for the boat, which was released and discharged from the seizure when bonded, and thereafter the case proceeded to final judgment as a proceeding *in personam*, in pursuance of the provisions

of the "Water Craft Act," the lien created by the statute upon the boat being discharged by the voluntary act of appellants, and the bond of the appellants substituted therefor.

In Johnson v. The Chicago and Pacific Elevator Co., 119 U. S. 388, that court used the following language: "Liens under State statutes, in suits *in personam*, are of every-day occurrence, and may extend to liens on vessels when the proceedings to enforce them do not amount to admiralty proceedings *in rem*, or otherwise conflict with the Constitution of the United States. There is no more valid objection to the attachment proceedings to enforce the lien in a suit *in personam* by holding the vessel by *mesne* process, to be subjected to execution on the personal judgment when recovered, than there is in subjecting her to seizure on execution. Both are incidents of a common law remedy which a court of common law is competent to give."

The doctrine here announced lends force to the argument of the appellee's counsel, that the mere fact that the water craft attachment act authorizes the seizure of a vessel by attachment on *mesne* process, and that such attachment was for a maritime tort, does not alone oust the State courts of jurisdiction, so long as the remedy adopted is one competent at common law, and the result reached is a judgment *in personam*.

It could not be successfully maintained that appellee might not have brought his common law action, in trespass or case, against the owner of the steam canal boat "Nunnemacher," and have recovered a judgment against such owner, and seized the boat upon execution in satisfaction of such judgment.

By the 21st section of the "Water Craft Act" it is provided that when the vessel seized upon *mesne* process issued on the petition and bond filed, is released by the bond of the owner of the vessel, or person interested therein, being filed in the court wherein such proceedings are pending, the bond stands by substitution in the place of the vessel. The bondsmen are before the court by their voluntary act, and the only judgment which can be rendered is, and must be, *in personam*.

This section also expressly provides that all proceedings subsequent to the giving the bond shall be the same as is now

provided by law in actions *in personam* in courts of record in this State. In The Moses Taylor, 4 Wall. 427, it was held the distinguishing and characteristic feature of a suit in admiralty is that the vessel or thing proceeded against itself is seized, impleaded and held as the defendant, and is judged and sentenced accordingly.

In The Lottawana, 21 Wall. 558, the Federal court denies the State court's admiralty jurisdiction of a proceeding purely *in rem*, in which all must agree, but concedes, as we think all must, the right to proceed by common law remedy, or such remedies as are equivalent thereto.

In Langdon v. Wilcox, 107 Ill. 606, in concluding their opinion the court say: "A proceeding under the 'Water Craft Act' is essentially, in many of its features, like a proceeding *in rem* in admiralty, though differing from the latter, it is believed, sufficiently to avoid any conflict with the Constitution of the United States, which gives to the Federal courts exclusive jurisdiction in admiralty."

This jurisdiction of the State courts has been challenged many times under statutes similar to the one here in question, before the Supreme Court of this State, and that jurisdiction has in every instance, so far as we are advised, been sustained and upheld, the citation of which cases is not deemed necessary. In view of which we are constrained to hold, in the case at bar, that the court below had jurisdiction thereof, and finding no error in the record, the judgment of the Circuit Court must be affirmed.

*Judgment affirmed.*