## THE KNAPP, STOUT & CO. COMPANY

*v.*

## JOHN MCCAFFREY.

| 178   107|
|s177 US63S|
|178    107|
|200   ⁷533|

*Opinion filed February 17, 1899.*

1. CARRIERS—*one engaged in business of towing is not a common carrier.* The owner of a steamboat engaged in the business of towing is not a common carrier, in the sense that he has a specific lien upon the goods carried for transportation charges, which is enforcible under the statute.

2. BAILMENTS—*one engaged in business of towing is a bailee.* One engaged in the business of towing is a bailee, and has a bailee's lien for transportation charges while he retains the goods.

3. SAME—*bailee's lien extends to all goods delivered under one contract.* A bailee's lien extends to all goods delivered under one contract though delivered at different times and in separate lots, and by retaining a portion of them he has a lien upon the whole.

4. SAME—*one towing a lumber raft does not lose lien by delivering part of it.* One towing a lumber raft, who, under orders from the owner, divides the raft and leaves half of it at a point *en route* in order to hasten the delivery of the other half, does not, by his delivery of the latter, lose his lien upon the part left *en route*, to which he returned but which he was prevented from delivering by the acts of the party who had purchased it from the original owner.

5. SAME—*bailee's lien not defeated by delay in enforcing payment.* A bailee's lien for towing a lumber raft is not defeated by the fact that as an accommodation to the owner he had not insisted upon payment of charges before delivering other rafts under the same contract, which was silent as to when payments should be made.

6. SAME—*when bailee's lien is not waived by filing claim against insolvent owner.* A bailee's lien on part of a lumber raft in his possession is not waived by his mere filing of a claim against the insolvent owner, which includes the charges for which the lien is claimed, where the written claim expressly asserts the bailee's right to the lien and reserves the right to enforce it.

7. JURISDICTION—*when equity has jurisdiction of bill to establish and enforce bailee's lien.* Equity has jurisdiction of a bill to establish and enforce a bailee's lien on property in his possession, which has been sold by the former owner, where the bailee's right to a lien and to possession is denied by the vendee, who is threatening to take forcible possession.

8. SAME—*when defendant is estopped to question jurisdiction of equity.* A defendant to a bill in equity to enforce a bailee's lien who obtains an order giving him possession of the property upon his giving

bond, which order is based upon the ground that the acceptance of the bond and delivery of the property were an equitable transaction, is estopped to afterward deny the jurisdiction of the court, although the order expressly provides that it shall not be construed as an admission of jurisdiction which the defendant denies.

9. SAME—*maritime courts—an admiralty proceeding is in rem.* A proceeding in an admiralty court is *in rem,* and is directed against the *res* itself, which is impleaded as the defendant.

10. SAME—*liability in personam cannot be enforced by an admiralty proceeding.* Where the defendant to a bill in equity to enforce a bailee's lien upon a raft for towage charges obtains an order giving him possession of the raft upon giving a personal bond to pay any lien which might be established in the plaintiff's favor, the proceeding becomes one *in personam,* beyond admiralty jurisdiction.

*McCaffrey* v. *Knapp, Stout & Co. Company,* 74 Ill. App. 80, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

This was a bill in equity, filed in the circuit court of Mercer county by John McCaffrey, against the Schulenburg & Boeckeler Lumber Company and its assignees, and Knapp, Stout & Co. Company. Said corporations, for brevity, will here be called the Schulenburg company and the Knapp company. The object of the bill was to establish and enforce a bailee's lien upon a half raft of lumber at Boston Bay, in Mercer county. The Knapp company applied for and obtained an interlocutory decree, under which it gave bond and took the raft away. Answers were filed and replications thereto, and there was a hearing, and a decree dismissing the bill without prejudice, from which decree McCaffrey prosecuted an appeal to the Appellate Court. The Appellate Court reversed the decree of the circuit court and remanded the cause, with directions to enter a decree for a particular amount, as hereinafter stated.

On April 6, 1893, the Schulenburg company and McCaffrey entered into a written agreement, by which (among

other things) McCaffrey was to tow rafts of lumber from Stillwater to St. Louis for the Schulenburg company, at certain prices therein fixed. There were many provisions of the contract not material to the present suit. McCaffrey towed many rafts for the company under said contract, and prior to October 6, 1894, the Schulenburg company was largely indebted to McCaffrey for towing charges under said contract, which indebtedness is still unpaid. On October 13, 1896, McCaffrey's steamer, *The Robert Dodds,* (George Tromley, Jr., master,) left Stillwater with raft No. 10 of that year. The water was very low in the river and the progress of the raft was slow. The Schulenburg company was in haste for its lumber, and pursuant to its directions the raft was divided by Tromley at Boston Bay, and one-half was taken into the bay and there fastened and left in charge in the manner hereinafter stated, and the other half of the raft was taken to St. Louis and there delivered on November 2. The Schulenburg company then paid the clerk of the boat $1250, without any directions as to its application, and McCaffrey applied it on the amount due him for towage of other rafts. The company then directed Tromley to leave the half raft in Boston Bay till spring, and delivered to him two additional lines to be used by him in making the raft more secure to the shore. The steamer reached Boston Bay again on the morning of November 4, and the captain and crew on that day did certain things and left certain directions for the care of the half raft during the winter, which will be hereinafter stated. On the next day, November 5, at St. Louis, the Schulenburg company sold said half raft to the Knapp company for $15,000, part in cash and part in a note due in four months, which was afterwards paid. On November 9 the Schulenburg company made a voluntary assignment at St. Louis for the benefit of creditors. McCaffrey offered, both to the Schulenburg company and to the Knapp company, to tow said half raft to St. Louis under his contract, but

the Knapp company forbade his doing so, and informed him that it did its own towing. Finally McCaffrey, claiming still to be in possession of the half raft but believing that the Knapp company was about to seek to take it from him by force, filed this bill, with the results already stated.

WISE & McNULTY, and BASSETT & BASSETT, for appellant:

The contract in this case is a maritime contract. *The Mystic,* 30 Fed. Rep. 73; *The W. J. Walsh,* 5 Ben. 72; *Bags of Linseed,* 1 Black, 108; *The William Murtaugh,* 17 Fed. Rep. 259; *Gilchrist* v. *Godman,* 79 id. 970; *Disbrow* v. *Walsh Bros.* 36 id. 607; 26 Am. & Eng. Ency. of Law, p. 93; 1 id. p. 648; Encyclopedia Brittanica, article "Ship."

Towage is maritime in its character and enforcible only in admiralty as a lien. *The Acadia,* 1 Brown's Adm. 73; *Wilson* v. *Sibley,* 36 Fed. Rep. 379; *Mason* v. *Murtaugh,* 3 id. 404; *Williams* v. *Steam Tug Cox,* id. 645; *The Governor,* 77 id. 1000; *Connelly* v. *Ross,* 11 id. 342; *In re Williams,* 74 id. 648; *The E. Luckerback,* 15 id. 924.

The contract being maritime, if a lien is given by it, then, to enforce it, the United States admiralty courts have exclusive jurisdiction, not only of Federal courts but of all State courts. *The Genesee Chief,* 12 How. 457; *The Magnolia,* 20 id. 296; *The Moses Taylor,* 4 Wall. 411; *The Ad. Hine* v. *Trevor,* 4 id. 555; *The Belfast,* 7 id. 624; *The Eagle,* 8 id. 15; *The J. E. Rumbell,* 148 U. S. 1; *Moran* v. *Sturges,* 154 id. 256.

There is no express lien given by the contract and none will be raised by implication of law, because it is evident that McCaffrey relied upon the personal responsibility of the lumber company. *The J. M. Welsh,* 8 Ben. 211; *The St. John,* 74 Fed. Rep. 842; *The Sarah Cullen,* 45 id. 511; *The Kingston,* 23 id. 200; *Beinecke* v. *Steamship,* 3 id. 665.

Equity has no jurisdiction to foreclose a common law lien. Such a lien is merely passive, and the remedy is to

retain the possession of the property until the debt is paid. The lienor has no right to sell the property. Jones on Liens, secs. 1038, 94, 112; Benedict on Admiralty, sec. 290; Story's Eq. Jur. sec. 506; Jones on Liens, secs. 3, 4, 20, 21, 335; *Buggo* v. *Railroad Co.* 6 Allen, 246; *Thames Iron Works* v. *Derrick Co.* 29 L. J. 714; *Hunt* v. *Haskell*, 24 Mo. 339; *Railroad Co.* v. *Herndon*, 81 Ill. 143; *Doan* v. *Russell*, 3 Gray, 382; *Bags of Linseed*, 1 Black, 112; 5 Am. & Eng. Ency. of Law, 417.

SCOTT & COOKE, and BROCK & GRAHAM, for appellee:

The carrier of goods being a bailee, has a lien thereon for his hire. 3 Am. & Eng. Ency. of Law, (2d ed.) 733-759; Cowen's Treatise, (3d ed.) 67; Story on Bailments, secs. 8-440, 588.

The delivery of a part of a cargo does not defeat a lien upon the remainder for the whole freight. *Morgan* v. *Congden*, 4 N. Y. 552; 3 Am. & Eng. Ency. of Law, (2d ed.) 760; *Schmidt* v. *Blood*, 9 Wend. 268; *McFarland* v. *Wheeler*, 26 id. 467; *Potts* v. *Railroad Co.* 131 Mass. 455.

Where there is a lien upon freight it is not lost unless there is an absolute and unconditional delivery of the property. There was no such delivery here. *Lane* v. *Railroad Co.* 14 Gray, 143; *Boggs* v. *Martin*, 13 B. Mon. 239; *Costello* v. *Laths*, 44 Fed. Rep. 105.

Where a bailee for hire is in possession of the property bailed he has a lien for his hire, and the correct method for its enforcement is by bill in chancery. *Fox* v. *McGregor*, 11 Barb. 41; 1 Cowen's Treatise, (2d ed.) 299; id. (3d ed.) 337; 1 Pomeroy's Eq. Jur. sec. 171, p. 195; 3 id. sec. 1231, p. 1889; 1 Story's Eq. Jur. sec. 506; 2 Redfield on Railways, (3d ed.) p. 160; id. (2d ed.) p. 317, par. 14; 2 Kent's Com. 642; *Railroad Co.* v. *Fackney*, 78 Ill. 116.

The applicant asked and obtained from the circuit court in this proceeding the exercise of its equitable jurisdiction, and thereby secured possession of the property involved. Having done this, it is estopped to deny the

jurisdiction of that court.   Bigelow on Estoppel, p. 603; *Fahnestock* v. *Gilham*, 77 Ill. 637.

Per CURIAM:   The opinion of the Appellate Court, as delivered by Mr. Justice DIBELL, is, in part, as follows:

"The first question is, whether McCaffrey had a lien on the raft for his towing charges while the raft was in his possession.   He had no lien by contract, for that instrument gave him none.   A common carrier has, at common law, a specific lien upon the goods carried, for his charges in transporting them, (13 Am. & Eng. Ency. of Law, 580,) and our statute (chap. 141) provides a means for enforcing it; but the weight of authority is that the owner of a steamboat engaged in the business of towing is not a common carrier, (*Caton* v. *Rumney*, 13 Wend. 387; *Alexander* v. *Greene*, 3 Hill, 9; Story on Bailments, sec. 496; Anderson's Law Dic. title 'Tow Boat;') and much more is this so where, as here, he tows only for a single party. Stephen thus defines bailment: 'Bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be re-delivered to the bailor, or otherwise dealt with according to his directions, or kept till he re-claims them.' (3 Am. & Eng. Ency. of Law,—2d ed.—733.)   The word 'goods' in this and other like definitions obviously includes every article of movable and tangible personal property.   Among the purposes included within said definition of bailment is 'the hiring of the carriage of goods from one place to another for a stipulated or implied reward.' (Cowen's Treatise,—3d ed.—67; Story on Bailments, sec. 8.)   There is nothing in this definition which excludes carriage of goods by water, and that such carriage comes within the principles of bailment is evident from Story on Bailments, secs. 496, 501, 504, and elsewhere.   The carrier of goods has a lien thereon for his hire while he retains possession. (Story on Bailments, sec. 588.)   This lien 'extends to all the goods delivered

under one contract, although they be delivered in different parcels and at different times, and the bailee may detain any portion of them as a lien upon the whole,' even if he has delivered a part.   3 Am. & Eng. Ency. of Law, —2d ed.—760; *Morgan* v. *Congdon*, 4 N. Y. 552; *Schmidt* v. *Blood*, 9 Wend. 268; *McFarland* v. *Wheeler*, 26 id. 467; *Potts* v. *Railroad Co.* 131 Mass. 455; *Blake* v. *Nicholson*, 3 Maule & S. 167; *Chase* v. *Westmore*, 5 id. 180.

"Up to the time the whole raft reached Boston Bay McCaffrey had a lien on each piece and parcel of lumber thereon for the carriage of the entire raft.   The Schulenburg company could not change or defeat that lien by directing him to divide the raft and bring half to St. Louis first.   That direction was solely for its benefit.   McCaffrey was ready and willing and offered to tow the half raft to St. Louis but was refused permission, and his right to do so was denied by the purchaser.   This excused, and, indeed, prevented, his further performance.   Therefore McCaffrey had a common law bailee's lien on said half raft while in his possession at Boston Bay for the towing of the entire raft at the contract price.   His claim is for $3795.82.   This sum we consider established by the proofs, except two items.   *   *   *   This leaves $3643.17, for which, in our opinion, complainant had a bailee's lien on said half raft while he retained possession, and which would bear interest at five per cent per annum from the date when the Knapp company forbade McCaffrey to tow said half raft to St. Louis under his contract, which was November 12 or 13, 1894.

"It is suggested there is no lien because the practice had been not to pay till after delivery.   But the contract does not provide when payments shall be made, and the price agreed was therefore due when the service was rendered.   Delay in enforcing payment for other rafts, which was merely of favor to the owner, could not defeat the lien.   McCaffrey filed a claim against the Schulenburg company, insolvent, for nearly $25,000, and included this

claim therein, and it is argued he thereby waived his lien. But in the written claim filed he expressly asserted a lien on said half raft for these charges, and states therein that he retained the right to enforce said lien. It is not shown that said claim was ever allowed or put in judgment, and it has not been paid. The mere filing of a claim thus guarded did not release the lien.

"The main question of fact in dispute is whether McCaffrey had possession of said half raft after he took it into Boston Bay. * * * We are of opinion McCaffrey had possession of the half raft till he surrendered it under the order of the court. He therefore had everything necessary to entitle him to a bailee's lien.

"McCaffrey has no adequate remedy at law. * * * He had a right to hold the raft till his charges were paid. But his possession and his lien were both disputed. The Knapp company obviously intended to take the raft away. As it was upon the water and near the channel of the river the ropes could be cut or removed and the raft taken away by a steamer at any time, unless guarded by a force of men at much expense and in a way likely to lead to a breach of the peace. Can a bailee in possession in such case have the aid of a court of equity, or must he be left either to maintain a small army at his own expense or to let his rights be taken away from him and then sue the tort feasor at law? McCaffrey's position was in many respects similar to that of a pledgee or chattel mortgagee, and their right to foreclose their lien in equity is well established. (*Dupuy* v. *Gibson,* 36 Ill. 197; *Cushman* v. *Hayes,* 46 id. 145; *Barchard* v. *Kohn,* 157 id. 579; *Carter* v. *Stevens,* 3 Denio, 33; Story on Bailments, sec. 348; Pomeroy's Eq. Jur. secs. 164, 1231.) The right to enforce a bailee's lien in equity comports with equitable principles. 1 Pomeroy's Eq. Jur. (sec. 112) mentions 'those cases in which the relief is not a general pecuniary judgment, but is a decree of money to be obtained and paid out of some particular fund or funds. The equitable remedies of this

species are many in number and various in their external forms and incidents. They assume that the creditor has, either by operation of law, or from contract, or from some acts or omissions of the debtor, a lien, charge or incumbrance upon some fund or funds belonging to the latter, either land, chattels, things in action, or even money; and the form of the remedy requires that this lien or charge should be established and then enforced, and the amount due obtained by a sale, total or partial, of the fund.' In section 171 the same author classifies 'those remedies which establish and enforce liens and charges on property rather than rights and interests in property, * * * by means of a judicial sale of the property itself which is affected by the lien, and a distribution of its proceeds * * * until they satisfy the claim secured by the lien.' 2 Kent's Com. (642) says: 'A lien is in many cases like a distress at common law, and gives a party detaining the chattel the right to hold it as a pledge or security for the debt, but not to sell it. * * * I presume that satisfaction from a lien may be enforced by a bill in chancery.' Cowen's Treatise, (3d ed. 337,) after stating that a party detaining a chattel by virtue of his lien thereon for charges has a right to hold it but not to sell it, says: 'It is supposed that the only way in which satisfaction from a lien can be enforced is by a bill in chancery.' In 2 Redfield on Railways (160, sec. 22, par. 14,) that author says: 'Neither the carrier, nor any other bailee having a lien, can sell the goods at common law in satisfaction of the lien. The appropriate remedy in such case is in equity.' 2 Rorer on Railroads, (1268,) discussing the carrier's lien on freight for charges, and that such lien only gives the right to retain and not to sell the property, further says: 'If the carrier will sell, other than when the statute allows it, he may find a remedy and means of selling by judicial proceedings to enforce the lien.' In *Gilchrist* v. *Railroad Co.* 58 Fed. Rep. 708, the United States Circuit Court for Montana sustained a bill to enforce a lien. The relief

was, in part, based upon the fact that the plaintiff had a lien and had a right to have it enforced, but had no plain, speedy and adequate remedy at law. (*Fox* v. *McGregor*, 11 Barb. 41.) 2 Jones on Liens (sec. 1038) states the con-- trary rule, that a court of equity has no jurisdiction to enforce a common law lien by a sale merely because there is no remedy at law, or because the retaining of posses- sion under a passive lien involves expense or inconven- ience. That author, in section 1041, recognizes Illinois as an exception, and as a State in which a court of equity has jurisdiction to enforce liens upon personal property generally, citing *Cairo and Vincennes Railroad Co.* v. *Fack- ney*, 78 Ill. 116. The court there said: 'Liens are enfor- cible in equity unless the law has provided for another mode. This is true of vendors' liens, equitable and other mortgages, and all statutory liens, so far as they now occur to us, except in all cases where the lien is in the nature of a pledge and possession accompanies the lien. If defendant in error had a lien he should have resorted to equity for its enforcement.' The general principle and the reason there stated sustain the present suit, while the exception suggested by the court seems against it. See, also, *Cushman* v. *Hayes*, 46 Ill. 145.

"But if a mere desire on the part of the complainant to collect his debt would not give jurisdiction to a court of equity to order the property held under the lien sold to pay it, there seems here to be other sufficient reasons for applying to equity. The Schulenburg company claimed to have sold to the Knapp company, and the latter claimed to have bought. Almost immediately after the alleged sale the Schulenburg company made an assignment for the benefit of creditors. The pleadings show the assignees do not admit the sale from the Schulenburg company to, the Knapp company, but deny it in general terms. Mc- Caffrey had no other effective way of determining with whom he might safely deal. Both the Schulenburg com- pany and the Knapp company have always denied that

McCaffrey had a lien and that he ever had possession after the raft was laid up in Boston Bay. Both said defendants claim that the raft was by McCaffrey delivered to the Schulenburg company when it was put into that harbor; that the Schulenburg company thereafter remained in possession of the raft till it sold to the Knapp company, and that it then put the Knapp company in possession, and that the latter thereafter remained in possession. The Knapp company declared, in its answer, its right and purpose to remove the raft, and it declared the same thing to McCaffrey before the bill was filed. The bill stated that the raft was so near the channel that when the annual June rise in the Mississippi should take place it would be likely to break up and destroy the raft unless moved further inland, and that his right to move it was in dispute, and the answer of the Knapp company makes it clear he could not have so removed it without resistance. It was his duty to protect this property while in his possession. It was valuable, and he would be responsible for any injury which could be traced to his neglect. He needed the help of a court of equity to keep him undisturbed in the control and care of the property. Such assistance could be afforded him under his prayer for general relief. It is plain from the pleadings that a large force of men was necessary to enable McCaffrey to retain the possession he had and which he was entitled to retain. We are of opinion that under all these circumstances it was proper for him to resort to a court of equity and bring all parties in interest before the court to have the questions of his possession and lien and the validity of the sale to the Knapp company, and the rights of the assignees, determined by a decree binding upon them all.

"It is said the circuit court of Mercer county had no jurisdiction because this was a maritime lien, and exclusive jurisdiction in such case is by act of Congress vested in the courts of the United States sitting in admiralty.

Can the Knapp company now raise that question in the condition of this record? On April 2, 1895, and before answer, the Knapp company filed a written petition in this case, wherein it asked the circuit court either to require McCaffrey to give a bond, with sureties in the sum of $25,000, conditioned to pay the Knapp company whatever damage it might suffer if the case should be decided against McCaffrey, or else that, upon the said Knapp company giving a bond in the sum of $6000 to pay McCaffrey any lien which might be established in his favor, 'then that this defendant shall have a right to take possession of said raft and remove the same to St. Louis, Missouri.' As a reason the Knapp company added: 'the defendant being in a court of equity, and believing that it is but right that this motion should be granted, prays the court to grant the same.' Thereupon the court heard said petition, and by consent of the parties ordered that the Knapp company file a bond in the penal sum of $6000, with sureties, conditioned to pay 'McCaffrey all sums of money for which he has a lien upon the property described herein,' and that upon the filing and approval of such bond McCaffrey 'shall surrender the property above described to the Knapp, Stout & Co. Company.' Bond was so given and the Knapp company took the raft away. The order provided with great care that no one should be prejudiced by the order,—that it should not be construed to be a confession of anything by anybody, nor an admission that the court had jurisdiction, etc. Nevertheless, the order was much to the detriment of McCaffrey and took from him important rights. It is very earnestly argued here by the defendants that if McCaffrey had any lien it was but a passive lien entitling him to retain possession of the raft till his charges were paid, but for which he had no other remedy. But if so, his passive lien was destroyed under this order. He no longer had possession. The raft was gone. It is a fair presumption that when the Knapp company got the raft to St. Louis the lumber was dis-

tributed in its yards and no longer traceable, and that it was impossible for the complainant to re-possess himself of the raft. It is also strongly urged here by defendants that if any tribunal can enforce McCaffrey's lien it can only be done by a suit *in rem* in admiralty. But the *res*,—the thing,—is gone, is dispersed, and McCaffrey's remedy in admiralty, if he ever had one, has been taken away from him under this order. True, McCaffrey consented to the order; but he was claiming a court of equity had jurisdiction, and it was in harmony with his position that the court should assume to dispose of the raft. The filing of the bill had not put the court in possession of the raft. It was the defendant, the Knapp company, that appealed to the court to permit it to give a bond and take the raft away, and it expressly based its petition upon the ground that it was in a court of equity, and that it was equitable that the court should accept a bond and order McCaffrey to surrender the raft to it. The Knapp company asked and obtained this relief from a court of equity, and practically destroyed McCaffrey's security unless his rights can be enforced in this cause. It is also true that in its motion the Knapp company denied the jurisdiction of the court, and the court in its order provided that the order should not be construed as an admission of jurisdiction; but this only puts the Knapp company in the position of denying the court's jurisdiction in one breath and in the next breath asking the court to take jurisdiction and give equitable relief in a material matter. Having asked and obtained the exercise of jurisdiction its denial of jurisdiction at the same time was idle. We think the Knapp company should be estopped by that action from questioning the jurisdiction of the circuit court of Mercer county. As the proof shows a valid sale by the Schulenburg company to the Knapp company before the assignment, the Schulenburg company and its assignees have no further interest in the raft, and as the Knapp company is estopped from questioning the jurisdiction of the

court below, that tribunal should have given McCaffrey a decree.

"Does he who, in the performance of a contract, renders services in towing a floating raft of lumber on a navigable river have a maritime lien thereon for such services? Is such a raft a proper subject for admiralty jurisdiction? Upon these questions the authorities are in conflict. The following tend to support the contention that such a raft is not within the jurisdiction of admiralty: *Tome* v. *Four Cribs of Lumber*, Taney's Dec. 533; *The W. H. Clark*, 5 Biss. 295; *Jones* v. *Coal Barges*, (Grier, J.) 3 Wall. Jr. 53; *Raft of Cypress Logs*, 1 Flippin, 543; *Raft of Timber*, 2 Robinson's Adm. 251; Henry on Admiralty Jur. sec. 52. See, also, *Gastrel* v. *Cypress Raft*, 2 Woods, 213; *The Hendrick Hudson*, 3 Benedict, 419. The contrary doctrine, that a raft of lumber may in a proper case come within the jurisdiction of courts of admiralty, is supported by the following: *United States* v. *Raft of Timber*, 13 Fed. Rep. 796; *Muntz* v. *Raft of Timber*, 15 id. 555; *The F. & P. M. No. 2*, 33 id. 511; *Seabrook* v. *Raft of Ties*, 40 id. 596; *Salvor Wrecking Co.* v. *Sectional Dock Co.* 3 Cent. L. J. 640; *Raft of Spars*, 1 Abb. Adm. 485; *Fifty Thousand Feet of Lumber*, 2 Low. 64. See, also, *Nicholson* v. *Chapman*, 2 H. Black. 254, and an *obiter dictum* in *Rock Island Bridge*, 6 Wall. 213. Perhaps the sounder argument supports the position that such a raft on a navigable river is a proper subject of admiralty jurisdiction, but where the question is left in so much doubt by the conflicting decisions of the various courts of admiralty, and the opposite view is supported by so strong authority as Chief Justice Taney and Justice Grier of the United States Supreme Court, the State courts should hesitate to renounce jurisdiction in a case like this, where no proceeding affecting the rights of the parties has ever been instituted in any court of admiralty.

"The jurisdiction of the courts of the United States to administer relief by proceedings *in rem* in admiralty is unquestionably exclusive. Such proceeding, however, is

against the property, only. 'The distinguishing and characteristic feature of such suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of a suit in admiralty over the vessel or thing itself which gives to the title made under its decree validity against all the world.' (*The Moses Taylor*, 4 Wall. 411.) No person is a defendant in such a suit. Parties who have real or possible interests determine for themselves whether they will appear and protect their interests. When a sale is made in such a proceeding it is good against the whole world. No such remedy was sought here. This was a suit against persons. No one would be bound by a decree herein except those made parties. A sale, though purporting to be of the property, would really be only a sale of the interests of the defendants therein. A personal decree for the deficiency, if any, might follow. The equitable circumstances before mentioned, growing out of the sale and assignment, the denial of possession, the intention to seize the property, the duty of McCaffrey to protect it from a rise of the river and the obstacles to so doing put in his way by the Knapp company, all furnish ground for equitable cognizance. We cannot hold that because a proceeding against the raft in admiralty might afford some relief, therefore a court of equity must keep its hands off if equitable circumstances exist which justify its granting relief on well established equitable principles against persons made defendants. Moreover, if the case had any likeness to a suit *in rem* in admiralty when it was started, it lost that distinctive character when the Knapp company, at its own request, took the raft and left a personal bond in its place. Thereafter the suit was wholly *in personam*. (*Johnson* v. *Chicago and Pacific Elevator Co.* 119 U. S. 388; *Gindele* v. *Corrigan*, 28 Ill. App. 476; 129 Ill. 582.) Though the cases cited were at law, yet they are in point as to the effect of giving bond and taking away the property. By the action

of the Knapp company the raft was withdrawn from the suit, and a suit relative to liability upon a personal obligation was substituted therefor. The suit, as so changed by the act of the Knapp company, was not within the jurisdiction of a court of admiralty.

"For the reasons stated the decree of the court below will be reversed and the cause remanded to that court, with directions to enter a decree in conformity with the views herein expressed in favor of McCaffrey in the sum of $3643.17, with interest thereon from November 13, 1894, at five per cent per annum."

We concur in the views above expressed and adopt the same as those of this court. Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*