### THE JEFFERSON.

(District Court, E. D. Virginia. January 14, 1908.)

SALVAGE—NATURE OF SERVICE—VESSEL IN DRY DOCK.

The word "salvage," as used in the maritime law, contemplates services rendered in connection with perils of the sea and to vessels or other craft and instrumentalities in use in the navigation of the sea or other waters, and there can be no lien for salvage for services rendered to a vessel while in a dry dock permanently attached to the shore for repairs in extinguishing a fire communicated to such vessel from buildings on the land; nor is a suit to enforce a claim for such services within the admiralty jurisdiction.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6312–6315; vol. 8, p. 7794.]

In Admiralty. Libel to recover salvage.

Thorp & Bowden, for libelants.
H. Putnam and Loyall, Taylor & White, for respondent.

WADDILL, District Judge. The libel in this case was filed by E. A. Simmons, late master of the steam tug Helen, "in behalf of himself and others interested as salvors," against the steamship Jefferson, one of the Old Dominion Steamship Company's vessels plying between the cities of Norfolk, Va., and New York, to recover for salvage services rendered in aiding to extinguish a fire on said steamship while in the dry dock of the Newport News Shipbuilding & Dry Dock Company, at Newport News, Va.

The cause is now before the court upon exceptions to the libel taken by the owners of the Jefferson, which present for determination the question of whether or not the Jefferson while thus in dry dock is subject to a claim for salvage. The precise point in issue seems not to have been decided before. Certainly no case has been brought to the attention of the court specifically passing thereon, though the cases of Cope v. Vallette Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501; and The Warfield (D. C.) 120 Fed. 847; bear strongly upon

the subject. In the first-named case the Supreme Court held that a dry dock permanently attached to the shore, and not intended for navigation, was itself not a subject of salvage service, and in the latter Judge Thomas, of the Eastern District of New York, decided that a vessel undergoing repairs in a dry dock was not the subject of a maritime lien for an injury sustained while therein by a person falling through one of her hatches. The correct determination of this case must depend more upon the proper consideration of the general principles of maritime law applicable to salvage awards than upon decisions definitely controlling the same. The elements of a salvage claim may well be taken into account in this connection, including the kinds of property against which it can be asserted, together with the character of service, and where the same may be performed.

Salvage is not based upon the mere right of compensation for work done and labor performed, but upon public considerations affecting the interests of commerce, the advancement and safety of navigation, and the security of lives and protection of property of those engaged in the hazardous service. In arriving at the amount of such an award the courts especially take into account the risks involved to the salvors, the enterprise, labor, and skill displayed, the value of the property salved, the extent of the danger from which it was saved, and also the value of the property and apparatus used in the expedition. These, however, have relation to perils encountered and services rendered and performed to vessels actually engaged in commerce, either on the high seas or other public navigable waters. The ship's business, the character of peril, and its locality, one and all, are important considerations. The Jefferson at the time of the service sued for was not a medium of commerce subject to dangers and hazards of the seas. She, on the contrary, was in an unseaworthy condition undergoing repairs. She could not move of her own volition, nor could she be used at the time in furtherance of commerce. She was neither pursuing nor capable of engaging in her ordinary business of navigation of the seas. In the Hendrick Hudson, 3 Benj. 419, Fed. Cas. No. 6,355, the court says:

"The fact that the structure has the shape of a vessel, or had been once used as a vessel, or can by proper appliances be again used as such, cannot affect the question. The test is the actual status of the structure as being fairly engaged in commerce or navigation."

In The Warfield (D. C.) 120 Fed. 847, supra, Judge Thomas said:

"In her position, on the dry dock, she was not only out of commission and withdrawn from navigation, but also incapable of navigation."

Nor can it be said that the libelants rendered their services in saving the Jefferson from a peril of the sea, which is manifestly the character of loss for which a salvage award is made. Hughes, Adm'r, 129; The Charlotte, 3 W. Rob. 68. The libel avers, in substance, that while the Jefferson was on fire, and in a dry dock from which all water had been withdrawn, the Helen hurried to the scene, and while lying at the bulkhead of one of the piers, and as close to the dry dock as possible, she, along with other tugs, played streams of water from their fire hose upon said steamship Jefferson, and continued so to do until the

fire was completely extinguished, and that "during all of which time libelant and said salvors rendered every possible assistance to said steamship, and during all of which time libelant and others entitled as salvors as aforesaid underwent great suffering from smoke, flame, and sparks, and endured great hardship from exposure to the wind and water in the bitter coldness of the weather, and libelant and other salvors incurred great danger from said smoke, flames, and sparks, and from electric wires, falling poles, adjacent burning buildings," etc. This language makes it clear that the peril in which the Jefferson was placed arose from a fire on the shore, and that there was no peril in connection with the sea, or the navigation thereof, other than that the libelants by means of the fire hose of their tug played the water from the harbor on the fire, with a view of extinguishing the same. In Benedict's Adm. (3d Ed.) § 300, this definition of salvage is given:

"The right to salvage depends solely upon the consideration that the property has been saved to the owners from maritime peril by the salvor."

In the case of The Emulous, 1 Sumn. 207, Fed. Cas. No. 4,480, Story, J., said:

"I take it to be very clear that, whenever the service has been rendered in saving property on the sea or wrecked on the coast of the sea, the service is, in the sense of the maritime law, a salvage service."

And Chancellor Kent in his Commentaries (volume 3, p. 245) says that salvage is "founded on the principle of rewarding individual spontaneous and meritorious services rendered in the protection of the lives and property of others on the sea or wrecked on the coast of the sea." Judge Marvin in his valuable work on Wrecks and Salvage (page 104, § 97 [1858 Ed.]) says:

"Salvage is a compensation for maritime services rendered in saving property or rescuing it from impending peril on the sea, or wrecked on the coast of the sea, or on a public navigable river or lake, where interstate or foreign commerce is carried on."

The locality of the peril may also be said to be important in the determination of the liability for an award for salvage in a case like this. In Abbott's Law of Merchant Shipping (12th Ed.) p. 539, it is said:

"Before the acts of Parliament presently mentioned, if the salvage was performed at sea or between high and low water mark, the court of admiralty had an original jurisdiction over the subject, and would fix the sum to be paid, and adjust the proportions, and take care of the property pending the suit, or, if a sale was necessary, direct a sale to be made, and divide the proceeds between the salvors and the proprietors according to equity and reason."

See, also, 2 Ency. of Laws of England, p. 368; Benedict's Adm'r (3d Ed.) § 111. In Kennedy's Civil Salvage (2d Ed.) p. 1891, the perils for which an award for salvage under the modern English practice may be made, is thus limited:

"When in danger, either at sea, or on the shores of the sea, or in tidal waters, or on the shores of tidal waters."

In Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373, the Supreme Court thus declares the sources of admiralty jurisdiction:

"Admiralty and maritime jurisdiction is conferred by the Constitution, and Judge Story says it embraces two great classes of cases—one dependent upon locality, and the other upon the nature, of the contract."

In Fifty Thousand Feet of Timber, 2 Low. 64, Fed. Cas. No. 4,783, Judge Lowell says:

"A suit for salvage is neither contract nor tort. It resembles the latter; it being a proceeding for unliquidated damages and in depending on locality."

The conclusion of the court is that the word "salvage," as used in maritime law, contemplates services rendered in connection with perils of the sea, and to vessels and other craft and instrumentalities in use in the navigation of the sea, as distinguished from those arising from ordinary casualty, such as fire or other damage to property on land, not itself subject to admiralty jurisdiction. The mere fact that the property upon which the fire was extinguished was that of a vessel will not suffice. There must have been a sea peril from which it was rescued, and the vessel itself must have been at the time the subject of a sea peril, in order to support a maritime lien, and afford jurisdiction in rem in the admiralty. The principles upon which salvage is awarded, the beneficiaries of such allowances, and the kinds of property subject to such claims entirely exclude the idea of extending that doctrine to services of any kind, however meritorious, arising from causes originating upon the land, or to property on the land, not cast thereon from a wreck on the sea. The claim for salvage services growing out of a collision with a dry dock in Cope v. Vallette Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501, was denied, and it would seem to follow that, if the dock itself was not the legitimate subject of the admiralty, a vessel therein, out of the water, withdrawn for the time being from the designs and purposes of commerce, would not be the object of a maritime lien, and afford jurisdiction, for a maritime claim such as an award for salvage. Counsel for the libelants cite The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73, and earnestly insist that under the language used by Mr. Justice Brown in that case, at pages 33 and 34 of 191 U. S., at pages 13 and 14 of 24 Sup. Ct. (48 L. Ed. 73), in which he says that repairs made on a vessel in a dry dock are not necessarily to be deemed as made on the land, they are entitled to maintain this case. Whatever force there may be in the position of counsel, it can hardly be said that the ruling in that case would be in any sense conclusive of the one under consideration here. That was not a case of salvage, but one arising out of contract for supplies furnished a domestic vessel, and for which a lien was claimed under the laws of the state, and enforced in the admiralty. The claim in such case was in no sense dependent upon locality, but was one of a maritime character, and the statutory lien for which was enforceable alone in the courts of the United States. The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296. The case of The Plymouth, 3 Wall. 20, 33, 34, 18 L. Ed. 125, will be found to be of special interest in connection with the subject under consideration. That was a case of tort arising by reason of the negligence of the master and crew of a vessel allowing fire to spread from their ship to property on shore, and burning the same. The Supreme Court held that such loss was not the subject of admiralty jurisdiction, that the dam-

age sued for was sustained wholly upon the land, and that the fact that the cause of the damage originated on water subject to admiralty jurisdiction did not make the case one for the admiralty, and, after emphasizing the fact that the jurisdiction of the admiralty over maritime torts depended upon locality, Mr. Justice Nelson discussed mixed cases where the cause of action arose partly on land and partly on water, and demonstrated conclusively that cases like The Robert W. Parsons, supra, for supplies furnished a ship, belonged to the class not dependent upon locality, but was controlled by the contractual relations of the parties.

Libelants also cite sundry cases in which salvage has been awarded for services in connection with saving vessels from burning piers or docks. These cases, however, turn upon entirely different considerations from the one in hand, as do also cases having relation to the saving of wrecked property on the sea or the shore of the sea.

It follows from what has been said that the libelants upon the facts and circumstances of this case are not entitled to assert a salvage claim, and that this court is therefore without jurisdiction to entertain this libel for such service, and the same should be dismissed, and a proper decree to that end will be entered.