## EUGENE BARRY & SONS v. STONE.

### In re CAMBRIDGE TANNERY CO.

(Circuit Court of Appeals, First Circuit. May 26, 1925.)

No. 1836.

1. **Payment ⊘⇒67(4)—Trade acceptance not presumed payment, where it would deprive creditor of benefit of security.**

Any presumption that, under the law of Massachusetts, a trade acceptance operates as payment, is met where, by so treating it, the creditor would lose the advantage of some security.

2. **Bankruptcy ⊘⇒188(1)—Tanner held entitled to lien on leather in its possession for all balances due from bankrupt.**

Where the charges made by a tanner to bankrupt for tanning hides sent to it were so many cents per square foot of leather produced, it was entitled to a lien on the leather in its possession on the bankruptcy for all balances of its unpaid charges.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

In the Matter of the Cambridge Tannery Company, bankrupt; Mason H. Stone, trustee. From an order disallowing a lien, Eugene Barry & Sons appeal. Reversed and remanded.

Lyman K. Clark, of Boston, Mass., for appellants.

Arthur P. Stone, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This appeal involves the extent of the appellants' lien on leather tanned by them and in their possession at the time of the bankruptcy of the Cambridge Tannery Company. The general situation is shown by the following excerpts from the referee's certificate to the District Court:

"The bankrupt was a leather merchant, and the creditor a tanner of hides. The creditor had tanned hides for the bankrupt over a period of several years. The hides were shipped to the creditor's tannery, tanned and finished by him, and reshipped to the bankrupt from time to time; the tanning charges on all hides delivered being charged to the bankrupt on the open or running account which the creditor carried on its books with the bankrupt. Some months before the bankruptcy the bankrupt's payments on this open account were in arrears, and by arrangement between the bankrupt and the creditor

5 F.(2d)—49

the latter drew trade acceptances on the former, which the bankrupt in turn accepted and returned to the creditor. The creditor then discounted these trade acceptances at its bank. It was by this course of business that the three trade acceptances attached to the proof of claim came into existence.

"The bankrupt made payments to the creditor from time to time by check on account, and the bankrupt's payments were applied, either in reduction of any balance due on the open account or in payment of trade acceptances.

"The charges for tanning were on the basis of so many cents per square foot. The charges for tanning the specific hides in the possession of the creditor at the date of bankruptcy amounted to $919.88. The creditor claimed that it had a general lien upon all hides in its possession to secure all indebtedness which might be owing by the bankrupt to the creditor. The trustee claimed that the creditor's lien was a specific lien only.

"I entered an order that the creditor had a valid lien upon the hides and the proceeds thereof to the amount of $919.88, and no more, and directing that the balance of the proceeds of the hides be surrendered to the trustee as assets of the bankrupt estate."

The total claim filed was for $5,554.03, in four items:

(1) Balance due on open account for tanning hides................$1,023.46
(2) Trade acceptance drawn by the creditor on the bankrupt and accepted by the bankrupt..... 1,330.57
(3) Trade acceptance drawn by the creditor on the bankrupt and accepted by the bankrupt..... 2,200.00
(4) Trade acceptance drawn by the creditor on the bankrupt and accepted by the bankrupt...... 1,000.00

The hides in the possession of the creditors were, by agreement, sold for $1,625, and the proceeds deposited in a special account. The referee states that:

"The charges of the creditor for tanning the specific hides which were in its possession at the date of the bankruptcy, and which were sold under the foregoing stipulation, amounted to $919.88, and the trustee in bankruptcy admitted that the creditor had a valid lien upon said hides for that amount."

The question, therefore, is whether the appellants are entitled to the balance ($705.12) of this fund of $1,625. The District Court sustained the referee's conclusion against the creditors in an opinion of one sentence, saying:

"I find that, by the course of dealing between the parties, the creditor, which brings

this petition, had waived its lien on the leather not retained in its possession."

[1] Clearly the learned District Judge misapprehended the facts in the case. The appellants made no claim of a lien on "leather not retained in its possession." Nor is there anything in the record from which a waiver can be legally inferred. Assuming, without deciding, that the trade acceptances —which are a species of inland bill of exchange (Jones v. Revere Preserving Co., 247 Mass. 225, 142 N. E. 70)—may, under some conditions, be regarded as presumptive payment under the Massachusetts rule, this presumption is met when, by treating it as payment, the creditor would lose the advantage of some security (Tucker v. Drake, 11 Allen [Mass.] 145; Davis v. Parsons, 157 Mass. 584, 32 N. E. 1117; Brewer Lumber Co. v. B. & A. R. Co., 179 Mass. 228, 234, 60 N. E. 548, 54 L. R. A. 435, 88 Am. St. Rep. 375).

The referee's certificate to the judge does not disclose with entire clarity the ground upon which he reached his conclusion- that the appellants had a lien to the amount of $919.88 only. But we infer that he intended to rule that each lot was a contractual unit, and construed the evidence as showing that the charges for tanning the skins retained of lots 17 and 20 were only $919.88.

The record and the briefs leave us in doubt as to whether all the skins retained were not component parts of lots 17 and 20, charges for tanning which were $2,908.79, or much more than the proceeds of the goods retained and sold.

[2] However this may be, the record clearly shows that the lots were not treated as contractual units. The referee expressly finds that "the charges for tanning were on the basis of so many cents per square foot"—not on the basis of lots. Compare 26 Cyc. 534, 536.

We concur in the following from the brief of appellee's counsel: "Each lot was not considered as a separate entity. The creditor received a number of bales of hides. How many feet they contained could not be known until tanned. The owner could have them finished as he pleased"—and, so concurring, hold that it concedes the appellants' claim.

It follows that the skins ran through the appellants' tannery as grain runs through a gristmill, or logs through a sawmill. On such facts, the manufacturers had a lien on the goods retained for the entire balance of their unpaid charges. Compare Ruggles v. Walker, 34 Vt. 468; Holderman v. Manier, 104 Ind. 118, 3 N. E. 811; White v. Hoyt, 7

Daly (N. Y.) 232; Knapp v. McCaffrey, 178 Ill. 107, 52 N. E. 898, 69 Am. St. Rep. 290; Lane v. Old Colony R. R., 14 Gray (Mass.) 143; Palmer v. Tucker, 45 Me. 316; Yearsley v. Gray, 140 Pa. 238, 21 A. 318.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.