## D. YEARSLEY ET AL. v. BALDWIN GRAY.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 9, 1891—Decided February 23, 1891.

One who takes stock to pasture for hire has a common-law lien thereon for his compensation; and where a number of animals are pastured, under an entire contract for the keeping of all, the owner may not remove any one of them without paying or offering to pay the amount due for all.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 10 July Term 1890, Sup. Ct.; court below, No. 32 August Term 1889, C. P.

Charge of Court below.

On June 7, 1889, Davis Yearsley, L. C. Emery and H. G. Emery brought replevin against Baldwin Gray, to recover possession of a horse. The writ was returned as served and property bond given by defendant. A statement of claim having been filed, the defendant pleaded non cepit and property, " and, for a further plea in this behalf, the defendant says he has a lien upon the said horse for pasturage, amounting to the sum of $89."

At the trial on December 2, 1889, it was shown that the defendant, who was a farmer, had a lot of horses and cattle belonging to the plaintiffs at pasture on his farm, under a contract by which he was to receive a certain sum per week therefor. The plaintiffs wished to take away a certain horse called Bill, but the defendant refused to let them have him until his bill for pasturing all the stock was settled. This writ was then issued. Under the evidence adduced, the amount of the compensation to be paid, and certain other matters immaterial here, were in dispute.

At the close of the testimony, the court, BUTLER, J., charged the jury in part as follows:

[Now, as to the law. As we understand this case, this defendant had the right to retain this horse, if any keep was owing to him on account of these horses, or any of the other horses taken there at the time this horse was, or in pursuance of a bargain made with Mr. Gray.] [1] . . . .

[We have said to you before, but that you may make no mistake we repeat again, if, after examining these accounts, you find that there is anything owing to Mr. Gray from these plaintiffs, for the keep of these horses, to which we already have alluded, your verdict will be for Mr. Gray.] [2] . . . .

We have been asked to charge you on certain points. The plaintiffs' points are as follows:

1. If the jury believe there were other horses belonging to the plaintiffs in the possession of the defendant, ample in value to cover his claim for the keep of the horses, and the plaintiffs offered to permit said horses to remain as a pledge for anything that might be due from them to him, he could not refuse to give up the horse in question.

Answer: We disaffirm that point, and say that, of course, if

Arguments.

the defendant has seen proper to make any other arrangement with these plaintiffs for anything that they might owe him, he had a right to do so; but if he persisted in detaining the property until his bill was paid, if the plaintiffs owed him anything then he would have the right, as we have said before, to keep this horse.[3]

2. There being other horses in the possession of the defendant, belonging to the plaintiffs, sufficient to cover the claim of defendant, he might have held them as a pledge for the keep of all the horses, and he could not refuse to give up the horse in question.

Answer: We disaffirm that point, and say to you, as we have said before, that if the defendant had seen proper to make any arrangement with the plaintiffs, for the payment of anything they might owe him, he had a right to do it; but if he insisted upon holding this horse for any keep which was owing, he had a right to do it provided the keep was owing, as we have already said to you in the general charge.[4]

—The jury returned a verdict in favor of the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal, assigning for error:

1, 2. The portions of the charge embraced in [ ] [1] [2]

3, 4. The answers to plaintiffs' points.[3] [4]

*Mr. Wm. M. Hayes*, for the appellants.

Counsel cited: Jackson v. Cummins, 5 M. & W. 342; Goodrich v. Willard, 7 Gray 183; § 1, act of April 7, 1807, 4 Sm. L. 403; Judgon v. Ethridge, 1 Cr. & M. 746; Binns v. Pigot, 9 C. & P. 297 (38 E. C. L. R.); Grinnell v. Cook, 3 Hill 486 (38 Am. Dec. 663); Ingallsbee v. Wood, 36 Barb. 455; s. c. 33 N. Y. 578 (88 Am. Dec. 409); Alt v. Weidenberg, 6 Bosw. 176; McIntyre v. Carver, 2 W. & S. 392; Yorkes v. Greenbaugh, 2 Ld. Raym. 866; s. c. 1 Salk. 388; Fox v. McGregor, 11 Barb. 41; Edwards on Bailments, § 473; Bissell v. Pearce, 28 N. Y. 255; Brown v. Dempsey, 95 Pa. 246; Steinman v. Wilkins, 7 W. & S. 466; Hensel v. Noble, 95 Pa. 345; Young v. Kimball, 23 Pa. 195.

*Mr. William T. Barber*, for the appellee, was not heard.

In the brief filed, counsel cited: Mathias v. Sellers, 86 Pa.

486; Megee v. Beirne, 39 Pa. 50; Story on Bailments, § 440; Trickett on Liens, §§ 733, 761; Hensel v. Noble, 95 Pa. 345; Young v. Kimball, 23 Pa. 193; Mathias v. Sellers, 86 Pa. 486; McIntyre v. Carver, 2 W. & S. 392.

PER CURIAM:

It is a well-settled rule of law that an agister is not bound to restore a horse which he has taken to pasture, until his compensation is paid or tendered: Megee v. Beirne, 39 Pa. 50; Mathias v. Sellers, 86 Pa. 486. This is because the agister has a common-law lien for its keep. And it is equally well settled that, where there is an entire contract for the keep of a number of horses or other animals, the agister has a lien on them all, not only for their proportionate part of the sum due for the keep of all, but for the entire amount due upon all the animals embraced in the contract: Young v. Kimball, 23 Pa. 193; Hensel v. Noble, 95 Pa. 345.

In this case, the defendant had taken a number of plaintiffs' horses and cows to pasture, for a compensation agreed upon. The plaintiffs attempted to take away one of the horses without paying or offering to pay for its keep. The defendant denied their right to do so, and the plaintiffs brought replevin for the horse. Their contention was that the animals which were left were more than adequate to secure the unpaid bill. This may be so, but the defendant had a right to all the security in his hands, and this right could not be taken from him at the will of the plaintiffs. If, in the opinion of the latter, the defendant had more security than was necessary, the obvious remedy was to pay for their cattle and take them away. We know of no case in which a debtor can require his creditor to give up a portion of his security without payment of the debt.

Judgment affirmed.