J-S03032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JANIS O'CONNOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELMER & LORI SNYDER | : | No. 787 MDA 2023 |

Appeal from the Judgment Entered July 26, 2023
In the Court of Common Pleas of Adams County Civil Division at No(s):
2019-SU-0476

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED MAY 07, 2024**

Janis O'Connor ("O'Connor") appeals pro se from the judgment entered by the Adams County Court of Common Pleas (the "trial court"), in favor of Elmer A. Snyder and Lori Snyder (collectively, "the Snyders"), in the replevin action without bond O'Connor filed against the Snyders concerning the right to possess certain horses. Following our thorough review of this matter, we conclude that the trial court erred by awarding the Snyders continued possession of the horses and by not entering a conditional verdict to enforce the rights of the parties. We therefore vacate the judgment and remand to the trial court for further proceedings.

This case has a long and protracted history, punctuated by numerous procedural irregularities, the fact that both parties proceeded pro se before

the trial court and (for O'Connor) on appeal,[1] and a record that just barely allows for appellate review. O'Connor, a Maryland resident, owns horses. The Snyders operate a horse transporting company based in Adams County, Pennsylvania. O'Connor and the Snyders became acquainted through the equine community. In late April 2018, O'Connor's horse, Nubiti, birthed a foal, referred to herein as Colt.[2] Because O'Connor was recovering from a femur fracture, the Snyders offered to care for Nubiti and Colt temporarily. O'Connor and the Snyders agreed that the Snyders would care for the horses for three months at the Snyders' property in Adams County. In lieu of monetary compensation for the three months of care, O'Connor agreed to give another colt, referred to herein as Yearling, to the Snyders.[3]

Nubiti and Colt arrived on the Snyders' property on or about April 28, 2018. It did not take long for disputes to arise concerning the care of Nubiti and Colt and their medical needs. The parties' relationship quickly

---

[1] The Snyders did not submit a responsive brief before this Court.

[2] The name of the foal does not appear in the certified record. The terminology for a horse changes based upon the horse's age and reproductive capabilities. For ease of reference, we will refer to Nubiti's foal as "Colt," although the horse technically grew from a colt (a young uncastrated male horse) to a gelding (an adult castrated male horse) during these proceedings.

[3] The promised colt is also unnamed in the record. Because O'Connor referred to him as "the yearling," we refer to this colt as "Yearling" for ease of reference.

- 2 -

deteriorated.[4]  Within weeks of the horses' arrival, O'Connor demanded that the Snyders return Nubiti and Colt.  The Snyders refused to release the horses. The Snyders indicated they would release the horses if O'Connor transferred ownership of Yearling or reimbursed them for transportation, boarding, and veterinarian costs.  O'Connor did neither.

The record reflects that the Snyders paid for Nubiti to receive certain medical care, but given their lack of ownership, they declined to provide Nubiti with more extensive medical treatment.  At some unknown point, the Snyders found Nubiti dead.  Further, while in their care, the Snyders arranged for Colt's castration without O'Connor's knowledge or consent.

On April 30, 2019, O'Connor initiated the underlying civil action by filing a pro se complaint for replevin of Nubiti and Colt against the Snyders.[5]  She

_____

[4]  Also brewing between the parties was a concurrent dispute concerning other horses owned by O'Connor that were in the Snyders' possession.  These horses, however, are not the subject of this replevin action.

[5]  Litigation concerning this equine dispute has not been isolated to this replevin action.  *See, e.g., Commonwealth v. O'Connor*, 1266 MDA 2020, 2021 WL 4130041 (Pa. Super. Sept. 10, 2021) (non-precedential decision) (affirming O'Connor's conviction for summary defiant trespassing, which stemmed from O'Connor's efforts to enter the Snyders' property in October 2018 to view her horses and a cat that O'Connor believed belonged to her); *O'Connor v. Snyder*, No. 1:22-CV-1607, 2023 WL 6129499, at *3 (M.D. Pa. Sept. 19, 2023) (dismissing O'Connor's complaint filed against the Snyders alleging a federal racketeering claim related to an "alleged loss of a broken generator, [O'Connor's] disagreement with the Snyders over horse boarding fees, and the October 2018 disappearance of her kitten").

*(Footnote Continued Next Page)*

- 3 -

Sprinkled throughout the record are vague references by the parties to civil actions that seem to relate more directly to the current action. For example, it appears that in July 2018, O'Connor filed a civil action against the Snyders regarding Nubiti and Colt in the Frederick County District Court in Maryland. The certified record does not provide clarity about the exact nature and disposition of the Maryland action.

In September 2018, O'Connor initiated a replevin action in the Court of Common Pleas in Adams County, which was docketed at 18-S-800. According to an excerpted portion of the notes of testimony from a November 27, 2018 hearing, the trial court denied O'Connor's motion for a writ of seizure, thereby leaving the horses in the Snyders' possession. *See* Snyders' Preliminary Objections, Unnumbered Attachment (N.T., 11/27/2018, at 10-12); O'Connor's Motion for Partial Summary Judgment, Exhibit 3d (same). The trial court informed O'Connor that it "normally" would consider granting the writ of seizure contingent upon O'Connor's posting of a bond "in the full amount of the outstanding room and board," but that it was not going to issue the writ because of the parties' factual disputes regarding the terms of their agreement. *See id.* In February 2019, the trial court apparently dismissed O'Connor's replevin complaint based upon preliminary objections filed by the Snyders. *See* O'Connor's Answer to Order to Show Cause, 9/9/2021, Unnumbered Attachment (Order, 2/6/2019).

There is also reference to a judgment entered in favor of the Snyders and against O'Connor in a suit brought by the Snyders to recoup boarding fees. Pennsylvania court records indicate that the Snyders obtained a judgment for $12,000 against O'Connor before the magistrate in Adams County on November 1, 2022, but that O'Connor filed an appeal. *See* Docket Sheet, ***Snyder v. O'Connor***, MJ-51302-CV-0000141-2022. O'Connor attached what purports to be a notice of judgment of non-pros entered against the Snyders in Adams County Court of Common Pleas on January 20, 2023. *See* O'Connor's Motion for Partial Summary Judgment, Exhibit 2e (Notice of Judgment of Non-Pros, 1/20/23, ***Snyder v. O'Connor***, 2022-SU-1139).

It is unclear whether any of the prior actions could have had a preclusive effect upon the current litigation. Even if so, the Snyders did not assert the affirmative defense of res judicata in their answer to O'Connor's complaint, thereby waiving it. ***See Hopewell Ests., Inc. v. Kent***, 646 A.2d 1192, 1194 (Pa. Super. 1994) (noting that a party waives the affirmative defenses of res judicata and collateral estoppel by not pleading them as new matter in an answer); ***see also*** Pa.R.Civ.P. 1030, 1032.

also filed a motion seeking a writ of seizure.[6]   The trial court dismissed O'Connor's motion for a writ of seizure without prejudice, noting that O'Connor may refile the motion upon payment of the filing fee.   O'Connor refiled her replevin complaint along with the requisite filing fee in June 2019, but she did not refile the motion for a writ of seizure.

In the years that followed, there were periods O'Connor let the case lay dormant and others wherein she had great difficulty serving the complaint upon the Snyders, requiring her to request reinstatement of the complaint numerous times.[7]   Finally, O'Connor successfully effectuated service upon the Snyders in July 2022, over three years after she first filed the complaint.

The complaint contained one count for replevin, asserting that Nubiti and Colt were not "subject to any consensual, possessory lien," that the Snyders housed the horses primarily as a favor, and that the promise of

---

[6]   A writ of seizure is a supplementary procedure to seize property prior to judgment.   **See** Pa.R.Civ.P. 1073-1077.   A plaintiff in a replevin action has two options regarding the property at issue: (1) obtain a writ of seizure to regain possession of the property prior to judgment and posting a bond, or (2) pursue a "replevin without bond," which forgoes posting a bond and leaves the possession of the property with the defendant pending litigation.   **See** Pa.R.Civ.P. 1075; **see also** Civil Procedural Rules Committee Explanatory Comment to Pa.R.Civ.P. 1071-1087 (describing replevin without bond as an action "in the nature of a declaratory judgment proceeding to determine the right to possession of the property").

[7]   **See** Pa.R.Civ.P. 401(b)(1) ("If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule … the prothonotary upon praecipe and upon presentation of the original process, or a copy thereof, shall continue its validity by designating the writ as reissued or the complaint as reinstated.").

Yearling in exchange was contingent upon the Snyders' boarding the horses for three months. *See* Complaint, ¶¶ 11-13. According to O'Connor, she had valid concerns concerning the care her horses received by the Snyders and demanded their return within two weeks of their arrival. *See id.,* ¶¶ 16-17. O'Connor averred that she requested a bill, but the Snyders refused to release her horses until O'Connor gave Yearling to them. *See id.*, ¶¶ 17-18. The Snyders then engaged in a "campaign of threats, defamation and blackmail, stalking, repeatedly trespassing, making baseless complaints to Animal Control and other unlawful actions." *Id.*, ¶ 18.

O'Connor estimated the value of Nubiti as $1,000 and the value of Colt as $300, with the caveat that she was unable to conduct an appraisal because the horses were in the Snyders' possession. *Id.*, ¶ 6. Although O'Connor indicated that she was filing a motion for an immediate ex parte writ of seizure pursuant to Pa.R.Civ.P. 1075.2 concurrently with the complaint, *id.*, ¶ 20, she did not, and she also did not post a bond. O'Connor sought an order directing the Snyders to "cease their unlawful actions vis a vis these animals," and an award for costs of the suit and "damages for the unlawful retention of these animals minimally equal to any amount defendants may claim." *Id.*, Wherefore Clause.

The Snyders, also proceeding pro se, filed preliminary objections and an answer to the complaint on the same day. In the answer, the Snyders admitted that O'Connor owned the horses, but averred that they were entitled

to possess the horses "due to non[-]payment for boarding services we provided." Answer to Complaint, ¶¶ 3, 19. The Snyders averred that the parties agreed upon a mutually contingent arrangement, wherein the Snyders would board Nubiti and Colt in exchange for Yearling; that the Snyders asked for monetary compensation only after O'Connor "would not honor [the] original arrangement"; and that O'Connor did not give monetary compensation or Yearling to the Snyders. *Id.*, ¶¶ 11-13. The Snyders asserted that "an estimated value on the horses" was "virtually impossible," because O'Connor could not prove the horses' legal birthright. *Id.*, ¶¶ 6-7. The Snyders' answer did not include separate headings setting forth new matter—including the amount of O'Connor's debt or the assertion of affirmative defenses[8]—or a counterclaim asserting any basis for the award of damages to them. In a concluding paragraph, the Snyders asked the trial court to grant their preliminary objections, dismiss O'Connor's complaint with

_____

[8] A replevin action must be commenced within two years. *See* 42 Pa.C.S. § 5524(3). Although O'Connor filed her complaint within the statute of limitations for replevin, she did not accomplish service before the statute of limitations expired. The filing of the complaint only tolls the statute of limitations if the plaintiff made a good-faith effort to serve the complaint upon the defendant in a diligent and timely fashion. *See Gussom v. Teagle*, 247 A.3d 1046, 1056 (Pa. 2021); *see also Lamp v. Heyman*, 366 A.2d 882, 889 (Pa. 1976). Despite the three-year delay in service, the Snyders did not raise the statute of limitations as a defense or otherwise argue that O'Connor failed to fulfill her good-faith duty to effectuate service. *See* Trial Court Opinion, 8/23/2023, at 7 n.2; *see also Croyle v. Dellape*, 832 A.2d 466, 476 (Pa. Super. 2003) ("As a general rule, a statute of limitations defense must be raised in new matter or else it is waived.").

prejudice, allow them to retain possession of the property, and to "award any damages or relief as deemed appropriate." *Id.*, Wherefore Clause.

The trial court denied the Snyders' preliminary objections as moot, ruling that their filing of the answer waived the preliminary objections.[9] Trial Court Order, 9/12/2022, at 1. The trial court also denied as moot the preliminary objections to the preliminary objections filed by O'Connor. *Id.*

Thereafter, O'Connor filed a motion for leave to amend the complaint, seeking to add a claim for conversion and contending that the facts pled in the original complaint supported such a claim. *See* Motion for Leave to File Amended Complaint, 9/12/2022, ¶¶ 5, 7. Somewhat contradictorily, O'Connor sought amendment to address the Snyders' "intentional acts of dominion" and challenge to her ownership revealed by their answer and preliminary objections. *See id.*, ¶¶ 8-17. O'Connor averred that damages for the Snyders' alleged intentional conversion of her property were warranted because she could no longer retrieve the horses in the state that they were in in 2018. *See id.*, ¶ 5. The trial court denied the motion, ruling that O'Connor was aware of the facts concerning conversion in 2018, and that the two-year statute of limitations for a conversion claim had expired.

---

[9] A defendant is not obligated to file an answer until the preliminary objections have been resolved in some manner. *See Advance Bldg. Servs. Co. v. F & M Schaefer Brewing Co.*, 384 A.2d 931, 932 (Pa. Super. 1977). The Rules of Civil Procedure do not address the effect of simultaneously filing preliminary objections and an answer. In any event, the Snyders did not challenge the trial court's dismissal of their preliminary objections.

Following an October 26, 2022 scheduling conference, the trial court entered an order scheduling a non-jury trial for May 5, 2023. The case proceeded to discovery, which was peppered with various disputes, including one relevant to this appeal concerning the Snyders' failure to produce veterinarian records for Nubiti and Colt. Following O'Connor's motion to compel production, and a rule to show cause as to why the trial court should not hold the Snyders in contempt, the Snyders turned over the veterinarian records (with the name of the veterinary practice redacted) approximately ten days before trial.

Three days before the scheduled trial, O'Connor again sought leave to amend her complaint, this time based upon the "after-discovered evidence" of the veterinarian records. O'Connor sought to add an unknown veterinarian and veterinary practice as defendants. She requested to add new claims for conversion, "fraud, breach of contract, breach of implied covenant of good faith and fair dealing, veterinary malpractice/negligence, and destruction of property." O'Connor's Second Motion for Leave to Amend Complaint, 5/2/2023, at 1. Finally, she sought a continuance or, alternatively, to convert the trial to a hearing regarding the seizure of Colt.

The trial court did not rule upon O'Connor's motion in advance of trial. At the trial's inception, O'Connor renewed her motion, and the trial court denied it on the record without explanation. *See* N.T., 5/5/2023, at 3.

O'Connor then stated her desire to proceed by jury, and the trial court denied this request as well. *Id.* at 4-5.

O'Connor presented her case through her own narrative testimony and the testimony of Lori Snyder as if on cross-examination. Lori Snyder provided her own narrative testimony. At the conclusion of testimony, the trial court adjourned the hearing without commentary and without receiving further argument.

In a written order dated May 5, 2023, and entered on May 9, 2023, the trial court entered judgment in favor of the Snyders. The trial court directed the prothonotary to enter judgment in accordance with the order. The docket reflects that the prothonotary immediately complied. Thereafter, O'Connor filed a post-trial motion,[10] which the trial court denied without explanation.

---

[10] The post-trial motion and accompanying brief contain a hodgepodge of arguments. *See generally* O'Connor's Motion for Summary Judgment, New Trial or for Directed Verdict and Brief in Support, 5/15/2023. Despite the name of her motion, failure to hew closely to the requirements of Pa.R.Civ.P. 227.1, and the wandering nature of her arguments, under a liberal reading of her pro se pleading, we deem that she has preserved her appellate issues below. *See Barrett v. M&B Med. Billing, Inc.*, 291 A.3d 371, 374 n.2 (Pa. Super. 2022) (construing the contents of a motion filed within the ten-day period instead of the title).

J-S03032-24

O'Connor timely filed a notice of appeal[11] and a court-ordered Pa.R.A.P. 1925(b) concise statement.[12]

On appeal, O'Connor raises the following issues, which we set forth verbatim:

(1) Did the trial court err in denying both O'Connor's September 2022 Motion to Amend the complaint to formally include conversion, where the allegations of the Snyders'

_____

[11] O'Connor purported to appeal from the judgment entered on May 9, 2023. This judgment was a legal nullity because the trial court entered it without affording the parties an opportunity to file post-trial motions. *See* Pa.R.Civ.P. 227.1(c)(2) (providing parties with a ten-day period to file post-trial motions after notice of the filing of a decision in a non-jury trial); Pa.R.Civ.P. 1071 (indicating that, in general, the procedure for civil actions applies to replevin actions); *see also Moore v. Quigley*, 168 A.2d 334, 336 (Pa. 1961) (holding that entry of a premature judgment is "void and of no legal effect"). For this Court to obtain jurisdiction, a party must appeal from a judgment "entered subsequent to the trial court's disposition of any post-verdict motions." *See Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (en banc). Neither the trial court nor the parties sought to reduce the trial court's denial of O'Connor's post-trial motion to judgment. *See* Pa.R.Civ.P. 227.1(a)(2); Pa.R.Civ.P. 227.4(b)(2). Notwithstanding this jurisdictional requirement, under certain circumstances, an appellate court may "regard as done that which ought to have been done," and allow the appeal to proceed instead of quashing. *See McCormick v. Ne. Bank of Pennsylvania*, 561 A.2d 328, 330 n.1 (Pa. 1989); *Johnston the Florist*, 657 A.2d at 514; *see also* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). In a July 18, 2023 order, this Court directed O'Connor to praecipe the trial court to enter judgment. O'Connor filed a certified copy of the trial court docket showing that the prothonotary entered judgment on July 26, 2023, thereby perfecting O'Connor's earlier notice of appeal and allowing this Court to proceed.

[12] O'Connor's statement was not concise. In submitting such a prolix statement, O'Connor risked waiver. *See* Pa.R.A.P. 1925(b)(4)(ii), (iv), (vii). Nevertheless, the trial court was able to discern the issues that she was raising, and we will address each issue that she also addresses in her brief.

- 11 -

conversion were apparent in the original complaint, and the second, May 2, 2023, motion pretrial to amend, based on new, deliberately suppressed evidence which warranted the requested amendment and other relief?

(2) Did the trial court err in denying a jury trial despite O'Connor's timely request for a jury trial and repeated request before trial commenced?

(3) Did the trial court err in failing to follow the requirements of the Pennsylvania Code, Replevin Statute, Title 231, Subchapter E, and common law interpreting the statute:

a. in deciding the Snyders would retain possession of O'Connor's horse(s) against the weight of the evidence warranting replevin where no counterclaim was pending by the Snyders and where there was clear evidence of conversion and spoliation;

b. where the Snyders breached the (May 1, 2018) contingent oral agreement by malfeasance and conversion; and where the oral agreement was probably void due to the lack of necessary material terms, [November 27, 2018 hearing testimony adopted by defendants as Exhibit 2(b) to their preliminary objection dated 8/22/22]; and which agreement by its term of three months, had expired after about August 1, 2018[;]

c. where assuming, (although contested), that the Snyders had compensable damages, and assuming the agreement's term contemplated board fees payable in cash, defendants failed to mitigate their alleged damages, and where, if they also believed they qualified as common law agisters, the Snyders failed to promptly take any remedy of sale or suit, preferring instead to improperly accumulate unlimited charges[;]

d. and in leaving possession of O'Connor's remaining horse to the Snyders and failing to adjust the rights of the parties as required by Rule 1078, and/or Rule 1082, including O'Connor's rights and damages.

O'Connor's Brief at 3-4 (names substituted for parties' designation and punctuation altered; brackets in original).

## Amendment of Complaint

In her first issue, O'Connor argues that the trial court erred by twice denying her leave to amend her complaint. O'Conner's Brief at 28. O'Connor maintains that because she averred sufficient facts in her original complaint to establish the claim of conversion, the first leave to amend merely "formalize[d] the additional basis for relief." **Id.** at 29. Amendments to complaints are permissible, O'Connor argues, when they amplify facts already averred. **Id.** (citing **Schaffer v. Larzelere**, 189 A.2d 267, 270 (Pa. 1963), **abrogated on other grounds by Fine v. Checcio**, 870 A.2d 850, 859 (Pa. 2005)).

Our standard of review of a trial court's order denying a plaintiff leave to amend a complaint permits this Court to overturn the order only if the trial court erred as a matter of law or abused its discretion. **Pollock v. Nat.'l. Football League**, 171 A.3d 773, 778 (Pa. Super. 2017).

"A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading." Pa.R.Civ.P. 1033(a). A trial court possesses "broad discretion" to grant or deny a party's request to amend a pleading. **Pollock**, 171 A.3d at 778. "It is well-settled that while the right to amend pleadings is within the sound discretion of the trial court and should be liberally granted, an amendment introducing a new

- 13 -

cause of action will not be permitted after the statute of limitations has expired." ***Ash v. Cont'l Ins. Co.***, 932 A.2d 877, 879 (Pa. 2007).

As the trial court recognized, the problem with O'Connor's proposed amendment in September 2022 was that she sought to add an entirely new claim after the statute of limitations had expired. ***See*** Trial Court Opinion, 8/23/2023, at 2-3. O'Connor avers that she made a demand for the horses in May 2018, and the Snyders refused to return them. ***See*** Complaint, ¶¶ 17-19; ***see also*** O'Connor's Brief at 7. Therefore, any claim for conversion based upon the Snyders' refusal began to accrue at that time. ***See Kingston Coal Co. v. Felton Min. Co.***, 690 A.2d 284, 288 (Pa. Super. 1997) ("The time period within which a litigant must file an action for conversion is delineated in 42 Pa.C.S. § 5524(3), which provides that 'an action for taking, detaining, or injuring personal property, including actions for specific recovery thereof,' must be commenced within two years of the taking or injury.") (cleaned up).

Despite her claims to the contrary, O'Connor's proposed amendment would have done more than amplify her original averments. She sought to add a tort claim for conversion, which is a cause of action separate from the replevin action pled in the original complaint. ***Cf. Schaffer***, 189 A.2d at 270 (stating that "if the proposed amendment **does not change the cause of action** but merely amplifies that which has already been averred, it should be allowed even though the [s]tatute of [l]imitations has already run.") (emphasis added). O'Connor's own argument establishes that she was aware of the facts purportedly establishing conversion for over three years prior to

seeking leave to amend her complaint. **See** O'Connor's Brief at 11-12, 20, 28-29. Accordingly, the trial court did not abuse its discretion in denying leave to amend the complaint in September 2022.

O'Connor also contends that the trial court erred by denying the second motion for leave to amend her complaint that she filed three days before trial. **Id.** at 29-35. O'Connor maintains that the trial court erred by denying her second motion because newly discovered evidence—veterinarian records belatedly produced in discovery—showed that the Snyders concealed or suppressed necessary information that prevented her from adding a count or a party. **See id.** at 31.

The trial court explained in its Rule 1925(a) opinion that it denied the motion because the "rambling" nature of the motion "rendered it incapable of being intelligently addressed" by the Snyders or the trial court. Trial Court Opinion, 8/23/2023, at 5. O'Connor's appellate brief poses the same challenge. She references a variety of legal terms and claims, then intersperses this legal potpourri with repetitive and vague factual allegations (largely without citation to the record). **See, e.g.,** O'Connor's Brief at 21 (stating, in the summary of the argument, that the "vet records confirmed [the] Snyders' intentional suppression of conversion, trespass to chattel, negligence and other possible issues of defamation, misrepresentation and the like warranted the requested amendment to the complaint"); **id.** at 29-35 (intermingling discovery, tort and contract terms such as "conversion," "false representations," "malfeasance," "bad faith," breach of "oral contract,"

"suppression," "duty of care," "implied duty of good faith," the "doctrine of necessary implication," "bad faith," "malfeasance," "spoliation," "suppression," and "defamatory representations"). Although we have construed O'Connor's argument as liberally as possible given her pro se status, *see Satiro v. Maninno*, 237 A.3d 1145, 1151 (Pa. Super. 2020), we are left unsure of the specific claims she wanted to add, the specific facts upon which O'Connor wished to base these claims, and the place in the veterinary records that establishes these facts. Based upon the argument presented below and to this Court, we conclude that the trial court did not err or abuse its discretion in denying the motions.

### Jury Trial Waiver

O'Connor next argues that the trial court erred by disregarding her demand for a trial by jury in her complaint. *See* O'Connor's Brief at 36. She disputes the trial court's assertion that she agreed to a non-jury trial at the October 26, 2022 scheduling conference, which was not recorded or transcribed. *See id.* at 37-38. Given the inviolate right to a trial by jury enshrined in the Pennsylvania Constitution, O'Connor argues that the record must demonstrate an intentional relinquishment of a known right or privilege, and this record does not. *See id.* at 35-36.

The right to a trial by jury is set forth in our constitution. *See* PA. CONST. art. I, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate."). The Pennsylvania Constitution "does not differentiate between civil cases and criminal cases," and the right to a jury trial in a civil action is

- 16 -

a "fundamental aspect of our system of law." ***Bruckshaw v. Frankford Hosp. of City of Philadelphia***, 58 A.3d 102, 109 (Pa. 2012).

In any civil action in which the right to a trial by jury exists, a party must affirmatively request to exercise that right via a written demand that is filed and served. ***See*** Pa.R.Civ.P. 1007.1(a). Once made, a jury trial demand "may not be withdrawn without the consent of all parties who have appeared in the action." Pa.R.Civ.P. 1007.1(c).

Parties may waive the right to a trial by jury. ***See*** 42 Pa.C.S. § 5104 ("Trial by jury may be waived in the manner prescribed by general rules."); ***Warden v. Zanella***, 423 A.2d 1026, 1028 (Pa. Super. 1980) ("It is settled that the right to a trial by jury may be waived by conduct as well as by express statement."). The trial court is within its discretion to construe a party's failure to protest the scheduling of a non-jury trial as an implicit waiver. ***See Warden***, 423 A.2d at 1028. The trial court also has discretion to decline to revoke a prior waiver when a party attempts to withdraw the waiver on the day of the non-jury trial without justifiable legal excuse. ***See Rodney v. Wise***, 500 A.2d 1187, 1190–91 (Pa. Super. 1985).

The trial court acknowledged that O'Connor requested a jury trial via her complaint and that she had a right to a trial by jury. ***See*** Trial Court Opinion, 5/5/2023, at 4. Nevertheless, the trial court maintained that at the October 26, 2022 scheduling conference, the parties agreed to proceed to a non-jury trial, and the trial court memorialized the agreement in its scheduling order. ***See id.*** at 5; Trial Court Order, 10/29/2022, at 1 ("This matter is

- 17 -

scheduled … for a half-day non-jury trial."); **see also** Pa.R.Civ.P. 1087 (permitting a non-jury trial in a replevin action). The trial court explained that it denied O'Connor's last-minute request for a trial by jury because O'Connor did not request reconsideration or raise an objection to the scheduling order in the seven months between the scheduling of the bench trial and the commencement of trial. **See** Trial Court Opinion, 8/23/2023, at 5-6. O'Connor only sought to rescind her waiver of a jury trial after she had been sworn in at the bench trial and was about to offer her testimony. **Id.**

Under these circumstances, we discern no abuse of discretion in the trial court's declination to empanel a jury. O'Connor admits that she overlooked the portion of the trial court's order scheduling the matter for a bench trial. **See** O'Connor's Brief at 36. Even if O'Connor did not expressly agree to withdraw her jury demand at the scheduling conference as the trial court maintains, the trial court was within its discretion to construe O'Connor's silence following the scheduling order as a waiver by conduct. **See Warden**, 423 A.2d at 1028. Further, the trial court was within its discretion to decline to delay the scheduled bench trial when O'Connor renewed her request at the inception of her sworn testimony. **See Rodney**, 500 A.2d at 1190-91. O'Connor did not object to the trial court's denial of her request or offer argument as to why the trial court's decision was in error. **See** N.T., 5/5/2023, at 4-5 (O'Connor: "Your Honor, I did ask for a jury trial. I don't know if that has been denied as well." Trial Court: "That is denied.").

- 18 -

As for O'Connor's argument that the record must demonstrate that the parties knowingly and intelligently relinquished the right to a jury trial in a civil matter, this argument does not reflect the current state of the law. Unlike our Rules of Criminal Procedure, the Pennsylvania Rules of Civil Procedure do not set forth any requirements or procedures for withdrawing a demand for a trial by jury other than mutual consent of the parties. **Compare** Pa.R.Civ.P. 1007.1, **with** Pa.R.Crim.P. 620(a). Rule 1007.1(c) provides that a demand for a trial by jury may not be withdrawn without the consent of all parties who have appeared in the action, but it does not require that the trial court "recite necessary findings" in a scheduling order or provide an "indication that all parties agreed" as O'Connor maintains. O'Connor's Brief at 36.[13] Based upon

---

[13] An en banc panel of this Court recently opined that the procedures to waive a jury trial in a civil action should more closely match the rigor of the procedures to waive a jury trial in a criminal matter:

> [C]ourts have not addressed the importance of ensuring that a party is aware of the consequences of waiving a civil jury trial as they have in criminal proceedings … . We advocate that in both contexts — criminal and civil matters — it is critical that a party be fully informed of their right to a jury trial and the effect of waiving that right. We are not suggesting that an on-the-record colloquy is necessary in civil litigation like in criminal proceedings — just that, again, a waiver must be clearly described and understood to be giving up a constitutional right to a jury trial.

**Chilutti v. Uber Techs., Inc.**, 300 A.3d 430, 442–43 (Pa. Super. 2023) (en banc). We need not decide today whether this passage of **Chilutti** is non-binding dicta setting forth a suggested best practice or whether **Chilutti** purports to engraft additional requirements upon those set forth in the Rules of Civil Procedure for all civil cases. **Chilutti** post-dates the waiver at issue in this case and the parties do not ask us to address it.

the law, the record, and the arguments that O'Connor presents, we conclude that the trial court did not abuse its discretion by proceeding with the bench trial in this matter.

## **Replevin**

In her third issue, O'Connor contends that the trial court erred in denying her replevin claim in three principal ways: (1) determining that O'Connor did not prove a right to exclusive and immediate possession of her horses, either upon her demand for return or at the end of the agreement's term; (2) deciding that the Snyders were entitled to possess O'Connor's horses by virtue of a common-law agister's lien[14] and awarding continued possession of the horses to the Snyders without the Snyders' assertion of a counterclaim; and (3) not entering a conditional verdict to enforce the rights of the parties. **See** O'Connor's Brief at 17-18, 23-26, 40-50.[15]

_____

[14] As the trial court explained in its written opinion, when a horse owner contracts with an agister for the keep and pasturing of multiple horses in exchange for compensation, the agister possesses a common law lien for the entire amount due upon all the animals covered by the agreement. Trial Court Opinion, 8/23/2023, at 8 (citing **Yearsley v. Gray**, 21 A. 318 (Pa. 1891) (per curiam)).

[15] O'Connor purports to break down her third issue into four sub-issues, each of which contain multiple arguments. O'Connor ultimately blends her arguments together (interspersed with arguments unrelated to the issue of replevin). Although her presentation of the issues largely fails to abide by our Rules of Appellate Procedure, we were able to discern her principal points. To aid in ease of discussion, we have reorganized her arguments and will address them together.

O'Connor presents three alternative theories justifying her right to exclusive and immediate possession. First, she asserts that nothing in the parties' agreement prohibited her, as owner of the horses, from simply regaining possession upon her demand in May 2018. *See id.* at 17-18, 23-26, 40, 41, 44, 48. The parties agreed not to exchange money because she was in dire financial straits, and from her perspective, her obligation to transfer Yearling was only triggered once the Snyders provided three months of boarding services. *See id.* at 41, 44-46.

Second, even if the parties had a three-month arrangement, O'Connor insists that the Snyders breached their agreement in their handling of the horses' veterinary care, thereby entitling her to possession. *See id.* at 26-27, 41-42. The Snyders, O'Connor contends, declined to use antibiotic ointment O'Connor had on hand in Maryland, sought veterinary care for the horses without her knowledge or permission, and denied her request for her veterinarian to examine the horses. *See id.* O'Connor argues that, by these actions, the Snyders "exerted unauthorized control" in contravention of her ownership rights and the duty of good faith implied by the parties' agreement. *Id.*

Third, considering that the parties' agreement, by its terms, expired in or around August 2018, O'Connor maintains that she proved, at a minimum, that she was entitled to the right of immediate possession at the cessation of the three-month period. *See id.* at 23, 45-46.

Regarding the Snyders' right to possession, O'Connor argues that the trial court erred by determining that the Snyders had an agister's lien. By raising an agister's lien sua sponte, the trial court constructed a defense not advanced by the Snyders in their answer or at trial. *See id.* at 50. Moreover, the Snyders waived any right to a common law agister's lien, O'Connor contends, because they did not include a counterclaim for a lien in their answer. *See id.* at 42-43.

Alternatively, O'Connor argues that the Snyders cannot claim an agister's lien because they had not heretofore assumed such as a status and were not in the business of horse boarding. *See id.* at 44. Furthermore, O'Connor asserts, an agister is only entitled to a common law agister's lien by mutual consent, which was lacking here. *See id.* at 46. O'Connor points out that this was an informal agreement between then-friendly acquaintances with an express agreement not to exchange money, demonstrating that the parties never contemplated a lien. *See id.* at 25, 42, 44, 46-47, 49.

Finally, O'Connor argues that the trial court failed to enter a conditional verdict enforcing the rights of all parties. Not only did the Snyders refuse to return her horses, O'Connor points out, they failed to mitigate their damages, leaving her on the hook for "(unstated) amounts for years of unconsented to board." *Id.* at 49; *see also id.* at 40, 42, 44, 47, 49.

<u>The Trial Court's Reasoning</u>

In its Rule 1925(a) opinion, the trial court summarized the trial testimony that it deemed credible. *See* Trial Court Opinion, 8/23/2023, at 6.

The parties agreed that the Snyders would care for Nubiti and Colt for three months at their cost on their property, starting on or about April 28, 2018. *Id.* At the end of the three-month period, O'Connor would give a different colt to the Snyders as payment for their services. *Id.* O'Connor became upset that Nubiti and Colt were receiving veterinary care from the Snyders' veterinarian, prompting O'Connor to demand the return of her horses. *Id.* The Snyders "indicated they were willing to return the animals provided [O'Connor] honored the original agreement or reimbursed them for costs associated with the animals' boarding." *Id.* at 6. Over the next five years, the dispute deteriorated, Nubiti died, and the Snyders continued to care for Colt at their cost. *Id.* at 6-7.

Because Nubiti was incapable of being returned, and replevin is a claim to recover property, the trial court decided that Nubiti's death undermined any legal basis for a replevin claim. *Id.* at 7 (citing ***Winner v. Messinger***, 69 A.2d 172, 174 (Pa. Super. 1949), which holds that, because a replevin action is, in part, an action to recover possession of personal property, a replevin action cannot be maintained against one not in the actual or constructive possession of the property sought to be recovered). "Permitting O'Connor to recover damages through a replevin action for damages incapable of being recovered due to the expiration of the statute of limitations for a conversion action," the trial court opined, "is simply not equitable." *Id.*

- 23 -

Noting that "the reasons or motivations for the current dispute [differed] among the parties,"[16] the trial court found that it was "clear that [O'Connor] left horses with [the Snyders] and, despite requesting their return, did not tender full payment for their care." *Id.* at 8. As such, the trial court opined that the Snyders were justified in retaining the horses by virtue of a common law agister's lien. *Id*. (citing *Yearsley*, 21 A. at 318). Because, according to the trial court, O'Connor's service efforts were dilatory and neither side retained counsel, at the time of trial, the Snyders had been caring for Colt "for over five years without any financial contribution or support by O'Connor." *Id.*

> At this juncture, a real possibility exists that the value of the care rendered by the Snyders is greater than the value of the five-year-old colt. Under these circumstances, the court determined that the Snyders' agister lien defeated O'Connor's replevin claim and, moreover, it was inequitable to return possession of the animal to O'Connor as O'Connor remains unwilling to pay for the animal's care.

*Id.* at 8-9 (appellate roles substituted with parties' names; capitalization altered).

---

[16] We underscore the trial court's inability to offer more clarity about the nature of the parties' original dispute and deterioration of their relationship. It is apparent from the notes of testimony that the parties' pro se status and heated emotions between them appear to have clouded their ability to present the facts in an orderly and clear fashion, which interfered both with O'Connor's efforts to establish her case and the Snyders' efforts to establish their defense.

*Law and Analysis*

In reviewing O'Connor's claims of error, we abide by the following standard and scope of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial court must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*El-Gharbaoui v. Ajayi*, 260 A.3d 944, 958 (Pa. Super. 2021) (brackets omitted).

"Replevin is an action to regain possession of property." *Bartlett v. Demich*, 307 A.3d 736, 741 (Pa. Super. 2023). To successfully recover property in a replevin action, "it is incumbent on the plaintiff to show not only that he has title, but that he has also the right of immediate possession." *Int'l. Electrs. Co. v. N.S.T. Metal Prods. Co.*, 88 A.2d 40, 42 (Pa. 1952). A replevin matter is strictly limited to matters bearing upon title and the right of possession; all other matters must be excluded from consideration. *Blossom Prod. Corp. v. Nat'l Underwear Co.*, 191 A. 40, 41-42 (Pa. 1937);

*accord Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 933 (Pa. Super. 1989).

The plaintiff bears the burden of proving that she is entitled to exclusive possession. *Blossom Prod. Corp.*, 191 A. at 41. To prove exclusivity of the right of possession, the plaintiff must show that she has "a better right to possess the goods" than the defendant has. *Robinson v. Tool-O-Matic, Inc.*, 263 A.2d 914, 916 (Pa. Super. 1970). The plaintiff's title and right of possession need not be exclusive to the rest of the world, but it must be superior to those of the defendant. *Bartlett*, 307 A.3d at 741.

While a replevin action is distinct from an assumpsit action premised upon a breach of a contract, the parties' contract may establish their respective property rights, such as in a bailment. *Int.'l Electrs.*, 88 A.2d at 44. Under a bailment, a bailor transfers possession of her personal property to a bailee without transferring ownership. *Charlie v. Erie Ins. Exch.*, 100 A.3d 244, 252 (Pa. Super. 2014) (citing 6 Pa. Law Encyclopedia 2d, Bailment § 1). The bailor transfers the personal property "for the **accomplishment of some purpose** upon a contract, express or implied, that **after the purpose has been fulfilled**, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it." *Smalich v. Westfall*, 269 A.2d 476, 480 (Pa. 1970) (emphasis added). An implied bailment may arise "when the natural and just interpretation of the acts of the parties warrants such a conclusion." *Charlie*, 100 A.3d at 253.

During the bailment, "the bailor has no right to exclusive possession against the bailee unless the bailee has breached it or it has been otherwise lawfully terminated." ***Blossom Prod. Corp.***, 191 A. at 42. Thus, "in a replevin action, the bailor must show a right of possession through breach by bailee or lawful cancellation." ***Id.***

If the plaintiff establishes a "prima facie case" of title and the "right to immediate, exclusive possession," the "burden shift[s]" to the defendant to prove a property right that vested the defendant "with the right to retain possession, or at least a lien, giving it the right to a conditional verdict." ***Id.*** Counterclaims are not permitted in replevin actions, except "[a] claim secured by a lien on the property may be set forth as a counterclaim." Pa.R.Civ.P. 1082(a). "If any party is found to have a lien upon the property the court may enter a conditional verdict in order to enforce the rights of all parties." Pa.R.Civ.P. 1082(b).

In a replevin action, a party may only claim a lien that is established "at common law, by statute, or by agreement of the parties." ***Mitchell v. Std. Repair Co.,*** 119 A. 410, 411 (Pa. 1923). If a defendant holds a common law lien, it is not unlawful for the defendant to retain the plaintiff's property pending satisfaction of the outstanding debt. ***See Wilson v. Highway Serv. Marineland***, 418 A.2d 462, 464–65 (Pa. Super. 1980). If a plaintiff proceeds with a replevin action without bond, the lienholder is "justified in refusing to relinquish possession until completion of the replevin action absent adequate

security that their claim would be satisfied," and the trial court may not award judgment for special damages to compensate for the detention of the plaintiff's property during the pendency of the action. **Id.**[17]

"If judgment is entered after trial for the party in possession of the property, the judgment shall determine (1) the party's right to retain possession of the property, and (2) the amount of any special damages sustained." Pa.R.Civ.P. 1085(a). "If judgment is entered after trial for a party not in possession of the property, the judgment shall determine (1) the party's right to recover possession of the property, (2) the money value of the property, and (3) the amount of any special damages sustained." Pa.R.Civ.P. 1085(b). A monetary judgment is a secondary remedy in replevin actions, available only if the party out of possession could not practicably recover the property. **See Commonwealth ex rel. v. Fid. & Deposit Co.**, 811 A.2d 1040 (Pa. Super. 2002).

In the instant case, no one disputes that O'Connor is the owner of Nubiti and Colt. There is also no dispute that the Snyders' initial acquisition of the

---

[17] By contrast, if the plaintiff obtains a writ of seizure and files a replevin bond under Rules 1075 and 1075.3, a defendant asserting a lien may not lawfully detain the property. **See Wilson**, 418 A.2d at 464-65; **see also Mitchell v. McKinnis**, 426 A.2d 142, 144 (Pa. Super. 1981). The plaintiff's bond protects the defendant's lien, and the defendant may not retain possession through posting a counterbond. **See** Pa.R.Civ.P. 1076; **see also Wensel v. Reed**, 55 A.2d 548, 549 (Pa. Super. 1947). Recall that the trial court denied O'Connor's motion for a writ of seizure in 2018, but that she did not file a writ of seizure and post a bond in the current action. The propriety of the trial court's declination to grant her motion for writ of seizure in 2018 is not before us.

horses was lawful because O'Connor gave permission for the Snyders to possess and care for the horses for three months.  The only issue is whether O'Connor had a right to possess the horses that was superior to the Snyders' right of possession at any point after O'Connor demanded return of the horses.

The informal nature of the parties' arrangement belies the complexity of the property rights at issue.  The core terms of the agreement (three months' care in exchange for a particular horse) and the nature of the property (a large animal that needs ongoing daily care) reasonably may be interpreted as an agistment, which is a type of bailment.  **See Hatley v. West**, 445 P.2d 208, 209 (Wash. 1968) ("An agistment is a particular kind of bailment under which a person, for a consideration, takes in animals for care and pasturing on his land."); **see also** 3B C.J.S. Animals § 75 (explaining that, in general, "an agreement to pasture, feed, and care for [animals] is a bailment if the bailee has the custody and control of the [animals]").  The parties may create a bailment even if they did not refer to it as such and the receiving party normally was not in the business of caring for animals on their property.  **See Lear Inc. v. Eddy**, 749 A.2d 971, 974 (Pa. Super. 2000) ("Although the record indicates that appellee did not normally store equipment and assume the role of bailee, the 'natural and just interpretation' of the parties' conduct indicates the existence of an implied contract for bailment.").  Indeed, O'Connor has acknowledged that the parties' agreement constituted a

bailment. **See** O'Connor's Brief in Support of Motion for Summary Judgment, New Trial or for Directed Verdict, 5/15/2023, at 13-14.

The bailment obligated the Snyders, as bailees, to provide three months of care for the horses, and provided a corresponding benefit of three months possession of the horses, so that they then could be compensated by O'Connor's provision of Yearling, the colt that the Snyders desired. A bailee's possessory right is superior to the bailor's for the entire agreed-upon term in order for the bailee to realize the benefits. **See Int'l. Electrs.**, 88 A.2d at 43. As such, under the bailment arrangement at issue, O'Connor's mere demand for return of the horses in May 2018 did not suffice to restore exclusive possession to her. The agreement, which lacked any provisions for early termination, provided the Snyders with a superior possessory interest for the three-month term agreed upon by the parties. **See id.**; **but see, cf. Johnson v. Mathia**, 526 A.2d 404, 405 (Pa. Super. 1987) (observing the general rule that "either the bailor or the bailee may terminate a bailment at will **where the bailment is not for any particular time**") (emphasis added).

Because O'Connor could not terminate the agreement at will in May 2018, O'Connor had to prove that the Snyders breached the bailment arrangement to establish her right to exclusive possession prior to the expiration of the three-month period. It is undisputed that the parties' agreement did not contain specific terms regarding medical treatment. **See**

N.T., 5/5/2023, at 14 (O'Connor's testimony that the only terms that she remembered was that the Snyders would "take care" of the horses and "if everything was fine, … the yearling would be turned over to them"). The evidence introduced by O'Connor at trial did not clearly establish that the Snyders breached a bailee's general duty of care. *See, e.g.,* N.T., 5/5/2023, at 9, 14, 51-52; *see also Price v. Brown*, 680 A.2d 1149, 1151-52, & n.2 (Pa. 1996) (noting that a bailee in a mutually beneficial bailment must exercise ordinary diligence towards the bailor's property). Therefore, despite her ownership of the horses, O'Connor failed to prove that she had the right to immediate and exclusive possession under the parties' bailment agreement in May 2018.

Regardless of O'Connor's right to possession of the property in May 2018, the parties' agreement, by its terms, expired on or around July 28, 2018. Therefore, at that point under the bailment, O'Connor regained a superior possessory interest to the Snyders, and the burden shifted to the Snyders to prove that they had a valid property interest or a valid lien justifying their detention of the horses. *See Blossom Prod. Corp.*, 191 A. at 42.

Contrary to O'Connor's argument, the trial court did not invent a defense for the Snyders out of whole cloth. Consistent with their position at trial, the Snyders asserted in their answer a right to possess the horses based upon O'Connor's failure to pay for boarding services—in effect, an agister's lien.

*See* Answer, ¶ 3; N.T., 5/5/2023, at 38.[18]   An agister's lien is a type of

common law possessory lien that arises when an owner of a horse leaves a

horse with a bailee for "keep and care."  *See Hoover v. Epler*, 52 Pa. 522

(1866).  When a caretaker agrees to take possession of, and care for, animals

owned by another in exchange for money or other consideration, the owner

has no right to repossess any of the animals until the owner pays the caretaker

for the animals' keep.  *See Yearsley*, 21 A. at 318.[19]   The right of lien is a

---

[18]   The Snyders' answer is certainly not a model pleading.  They pled facts
supporting their defense within their denial of O'Connor's averments instead
of under a separate heading labeled new matter.  *See* Pa.R.Civ.P. 1030(a).
Arguably, a possessory lien in a replevin action is an affirmative defense that
must be asserted to avoid waiver.  *See* Pa.R.Civ.P. 1032(a); *Reott v. Asia
Trend, Inc.*, 55 A.3d 1088, 1095 (Pa. 2012) (describing an affirmative
defense as "a defendant's assertion of facts and arguments that, if true, will
defeat the plaintiff's ... claim, even if all the allegations in the complaint are
true").   Even so, the Snyders' procedural missteps are not fatal to their
preservation of the defense.  *See Iorfida v. Mary Robert Realty Co.*, 539
A.2d 383, 387 (Pa. Super. 1988) (holding that an affirmative defense does
not need to be pled by name as long as the answer is "susceptible of the
inference" that the facts alleged, if true, establish the defense); *Lachner v.
Swanson*, 380 A.2d 922, 925 (Pa. Super. 1977) (noting that a defendant
loses the possibility of compelling the plaintiff to reply but does not waive an
affirmative defense by pleading it within the answer instead of under new
matter); *see also Fox v. Andrews*, 304 A.3d 779 (Pa. Super. 2023)
("[C]ourts may construe pro se filings liberally where they have substantially
complied with the rules of procedure.").

[19]   The Supreme Court has not overruled *Yearsley* and we are not aware of
any statute that expressly abrogates it.  Unlike other states, Pennsylvania
does not have a current statute governing the procedure for liens on horses
for unpaid boarding debts.  Pennsylvania used to have a statute governing
liens on horses in the keep of livery stable keepers, but the General Assembly
determined that this 1807 law was obsolete and repealed it in 1992.  *See* 37
P.S. § 81 (repealed, 1992, June 25, P.L. 316, No. 60, § 1).  In 2013, the
*(Footnote Continued Next Page)*

charge, not against the horses, but against the owner, secured by a lien upon the horses. ***Young v. Kimball***, 23 Pa. 193, 195 (1854).

Even under a liberal construction of the Snyders' answer, however, the Snyders did not assert a counterclaim for a lien upon the horses. Their reference to possessory rights to secure O'Connor's unpaid debt was not set forth under a separate heading, it was not supported by factual averments outlining the claim against O'Connor, and it did not request affirmative relief from O'Connor—all of which our Rules of Civil Procedure require for a counterclaim. ***See*** Pa.R.Civ.P. 1019, 1021(a), 1031(a).

That said, although Rule 1082 discusses counterclaims and conditional verdicts within the same rule, we discern nothing within the plain language of Rule 1082(b)'s provision of a conditional verdict as being contingent upon the assertion of a lien as a counterclaim set forth in Rule 1082(a). To the contrary, Rule 1082(b) states that the trial court may enter a conditional verdict "[i]f any party [(not just the defendant who would assert a counterclaim)] is found to have a lien upon the property." Pa.R.Civ.P. 1082(b) (bracketed language added). Further, Rule 1082(a) states that a lien "may" be raised in a counterclaim, reflecting that the filing of the counterclaim on this basis is

Senate referred a bill entitled "Livery Providers Fair Lien Act" to the Agriculture and Rural Affairs Committee. ***See*** 2013 Pa.S.B. 995. The bill sets forth a procedure for liens attached to a horse for boarding services and to make the lien an agricultural lien under 13 Pa.C.S. §§ 9101-9809, governing secured transactions under Pennsylvania's Uniform Commercial Code ("UCC"). ***See*** 2013 Pa.S.B. 995, § 3(c). This bill remains in committee. O'Connor does not argue that the UCC applies to this matter. As such, we do not address whether it is applicable.

permissive, not mandatory. *See A. Scott Enterprises, Inc. v. City of Allentown*, 142 A.3d 779, 787 (Pa. 2016) ("Although 'may' can mean the same as 'shall' where a statute directs the doing of a thing for the sake of justice, it ordinarily is employed in the permissive sense.") (citation omitted). Although defendants typically assert the right to a common law possessory lien via a counterclaim, O'Connor has not convinced us that a lien must be raised as a counterclaim as opposed to a defense. *Accord Baranofsky v. Weiss*, 182 A. 47 (Pa. Super. 1935) (holding that, prior to adoption of Rule 1082(a), defendant's claim in affidavit of defense of a lien upon plaintiff's personal property was properly asserted to defend against plaintiff's replevin claim even without assertion of a counterclaim); *Koken v. Legion Ins. Co.*, 900 A.2d 418, 424 (Pa. Cmwlth. 2006) (explaining that, under the Pennsylvania Rules of Civil Procedure, counterclaims are a cause of action that the defendant has against the plaintiff at the time of filing the answer, whereas a defense defeats or diminishes the amount of the plaintiff's recovery); *see also* 6 Standard Pennsylvania Practice 2d § 29:4 ("The distinction between a counterclaim and a defense is that a defense merely precludes or diminishes the amount of the plaintiff's recovery, while a counterclaim may entitle the defendant in the original action to some amount of affirmative relief."). As such, and contrary to O'Connor's contention, we conclude that the Snyders did not waive their right to defend against O'Connor's claim of exclusive possession.

What the Snyders did waive, however, was their right to obtain affirmative relief against O'Connor based upon that lien by failing to plead the lien as a counterclaim. We thus conclude that the trial court erred by entering a general verdict in the Snyders' favor. Proof of a lien does not entitle the lienholder to a general verdict awarding him or her possession of the property, but only a conditional verdict to enforce the claim secured by the lien. **See** Pa.R.Civ.P. 1082(b) ("If any party is found to have a lien upon the property the court may enter a conditional verdict in order to enforce the rights of all parties."); **Wensel**, 55 A.2d at 549 (holding that the trial court erred by entering a general verdict because "a defendant in replevin standing upon a lien is not entitled to such a judgment, but only a conditional one"); **see also** 4 Goodrich-Amram 2d § 1082(b):1 ("Conditional verdict").

The general verdict left Colt[20] with the Snyders indefinitely without providing O'Connor any ability to satisfy her debt and to recover her

---

[20] O'Connor contends that the Snyders did not prove that Nubiti died, and even if she did die, the trial court erred by failing to apportion damages for O'Connor's loss. **See** O'Connor's Brief at 18-19, 50-51. She further argues that she is entitled to damages for the Snyders' unauthorized castration of Colt. **See id.** at 50-51. Lori Snyder testified that that she found Nubiti dead, and the trial court was entitled to find her testimony to be credible. **See** N.T., 5/5/2023, at 56 (Lori Snyder's testimony that they "found her deceased"). Regarding O'Connor's assertion that she is entitled to damages for the loss of Nubiti and the alteration of Colt, she fails to develop her argument in her brief. As such, we find this issue waived. **See** Pa.R.A.P. 2119(a); **Karn v. Quick & Reilly Inc.**, 912 A.2d 329, 336 (Pa. Super. 2006) ("arguments which are not appropriately developed are waived").

property.[21]  This error was compounded by the trial court's consideration of the estimated "value of the care" rendered by the Snyders "over five years without any financial contribution or support" by O'Connor.[22]  **See** Trial Court Opinion, 8/23/2023, at 8-9.  O'Connor chose, as is her right, to pursue replevin without bond "in the nature of a declaratory judgment proceeding to determine the right to possession of the property."  **See** Civil Procedural Rules Committee Explanatory Comment to Pa.R.Civ.P. 1071-1087; **see also id.** ("Seizure is never obligatory.").  As a lienholder, the Snyders had the right to assert a counterclaim to seek recoupment of the funds expended for the entire duration of the care they provided to O'Connor's horses.  They did not assert that right, whether by ignorance of the law or by choosing to bring a separate action against O'Connor to recover fees for their ongoing services.  Regardless

---

[21]  In fashioning its remedy, the trial court determined that O'Connor "remains unwilling to pay for the animal's care."  Trial Court Opinion, 8/23/2023, at 9. Perhaps this is true, but the trial court did not cite to any place in the record supporting this finding, and our independent review has likewise found no support for this conclusion.  Even if this assertion were supported by the record, the trial court was still required to enter a conditional verdict, which only granted O'Connor possession if she paid her debt.

[22] We acknowledge that O'Connor only valued Colt's worth as $300 in her complaint and did not offer specific evidence of his value at trial beyond "throw[ing] out a number" of $5,000.  **See** Complaint, at ¶ 6; N.T. 5/5/2023, at 7.  But "a real possibility" that the value of the horses' care is greater than the value of Colt—the finding upon which the trial court based its decision—is not an adequate judicial determination of the value of the property or the value of the boarding services.  This is particularly the case because we ascertain no place in the certified record clearly indicating what the value of the boarding services were for the duration of the bailment, let alone for the past five years.

of the reason, the trial court's decision effectively (and erroneously) awarded the Snyders the affirmative relief of damages for the costs of boarding the horses for the five years between the expiration of the agreement in July 2018 and the trial in 2023, without the Snyders' raising a counterclaim, proving these damages at trial, or even attempting to use legal procedures to dispose of O'Connor's complaint prior to trial. Thus, despite the protracted nature of this litigation, we are constrained to vacate the trial court's entry of judgment and remand the case to the trial court for entry of a conditional verdict pursuant to Rule 1082(b) to enforce the rights of the parties.

To reiterate, those rights are as follows. As the bailees and possessory lienholders, the Snyders had, and continued to have, the right to maintain possession of Nubiti and Colt until O'Connor pays her debt for the outstanding agister's costs during the term of the three-month bailment or provides Yearling to them, as agreed. As the bailor and owner of the horses, O'Connor had the right to regain possession of her horses at the conclusion of the bailment, but only upon her satisfaction of her debt for outstanding agister's costs during the term of the three-month bailment. Because the Snyders asserted their lien as a defense and did not assert a counterclaim, they have no right to affirmative relief in this replevin action beyond the right to defend against O'Connor's claim of superior possessory rights at the end of the three-month bailment by proving that they have a valid lien for their services during this period. Further, because O'Connor did not obtain a writ of seizure with bond, and the Snyders were entitled to elect to retain the horses as security

for the agister's costs during the bailment, she cannot recover any special damages for the Snyders' detention of the horses.

On remand, the trial court shall determine the amount of O'Connor's debt for the Snyders' agister costs related to the care of Nubiti and Colt for purposes of entering the conditional verdict, but only for the period of the three-month bailment period. The trial court may elect, in its discretion, to receive additional testimony or argument if needed to make this determination, but such testimony or argument shall be limited strictly to the issue of the amount of agister's costs incurred during the term of the original bailment, as expressly contemplated in the original agreement or reasonably implied thereby.

## Conclusion

We conclude that the trial court did not abuse its discretion by denying O'Connor's motions to amend her complaint and by proceeding with a non-jury trial. The trial court did, however, err as a matter of law in entering a general verdict in favor of the Snyders on the merits of O'Connor's replevin claim. Because the Snyders failed to assert a counterclaim, we vacate the trial court's entry of judgment awarding the Snyders continued possession of Colt and order the trial court to enter a conditional verdict to enforce the rights of the parties. Accordingly, we remand to the trial court for further proceedings as outlined in this memorandum.

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/07/2024